[S. F. No. 243.  Department One.—July 28, 1896.]

MAURICE PACHECO, APPELLANT, v. JUDSON MAN-
UFACTURING CO., RESPONDENT.

NEGLIGENCE—MASTER AND SERVANT—UNSAFE APPLIANCE — DEFECTIVE SHEARS FOR CUTTING IRON—FAILURE TO INSPECT.—A corporation engaged in the business of manufacturing iron and steel machinery, and using heavy shears operated by steam for the cutting of boiler iron, owes to its servants the duty of exercising ordinary care to keep them in a safe condition, and to use such practicable means and tests as common prudence shows to be proper for discovering defects which might ·occur with time and use; and where such tests were not applied, and the shears, being cracked and weakened, broke, to the injury of an employee, on account of such discoverable defect in their condition, the corporation is liable for such injury.

ID.—INFERENCE OF NEGLIGENCE—QUESTION OF FACT—NONSUIT.—Whether the inference and conclusion of negligence should be drawn from the evidence, is a question of fact to be determined by the jury from all the circumstances in the case, where the court can see that it might be so inferred; and, in such case, it is error to order a nonsuit.

ID.—EVIDENCE—DANGEROUS CONDITION OF SHEARS—CHARGE AS TO MAN-AGEMENT — LEADING QUESTION—OPINION OF WITNESS.—Evidence is admissible to show that instructions were given to pick out quick and active men to work at the shears, so that they might get away from the shears in case of accident, as tending to show that defendant knew the shears to be a dangerous instrumentality; but it is not error to exclude a question which is leading, or which calls for the opinion of the witness ·giving such evidence.

ID.—BREAKING OF OTHER SHEARS—DUTY OF INSPECTORS — FAULTY CON-
STRUCTION.—It is competent to prove that other shears made by de-
fendant for cutting iron at its works had broken, as tending to establish
the propriety of inspecting such machinery for defects; but where the
injury arose from keeping the shears causing the injury in an unsafe
condition, it is not permissible to inquire whether other shears broke
because of faulty construction, such inquiry being collateral and irrele-
vant.

ID.—EXPERT EVIDENCE — EXERCISE OF ORDINARY CARE — QUESTION FOR
JURY.—An expert witness may properly testify that a defect is discov-
erable by applying certain tests specified, but he cannot be permitted
to testify whether it would have been discoverable by ordinary care
and precaution, that being part of the ultimate question of negligence
to be determined by the jury.

APPEAL from a judgment of the Superior Court of
Alameda County and from an order granting a nonsuit.
F. B. OGDEN, Judge.

The facts are stated in the opinion.

*M. C. Chapman,* for Appellant.

The objection should have been sustained to the
question as to whether it was customary for foun-
dries, having machine shops, to make their own shears.
A custom cannot be invoked to justify a negligent
act. (Rice on Evidence, sec. 440; *Central R. R.* v.
*De Bray,* 71 Ga. 406.) It was error not to allow the
question as to whether anything was said about pick-
ing out quick and active men, so that they might get
away from the shears in case of accident. It was,
also, error not to allow the question asked expert Stut
as to whether a crack descending through one side
of the casting could not have been discovered by the
exercise of ordinary care and precaution. (*Goodsell* v.
*Taylor,* 41 Minn. 207; 16 Am. St. Rep. 700; *Warner* v.
*Erie Ry. Co.,* 39 N. Y. 468; *Laning* v. *New York Cent.
R. R. Co.,* 49 N. Y. 521; 10 Am. Rep. 417.) On a trial
before a jury, in an action for negligence, a nonsuit
should not be ordered by the court, unless there is no
evidence at all, or a mere scintilla of evidence, wholly
insufficient for the consideration of the jury. (*Wilson*
v. *Southern Pac. R. R. Co.,* 62 Cal. 164; *Barrett* v. *South-*

*ern Pac. Co.*, 91 Cal. 296; 25 Am. St. Rep. 186; *Noyes* v. *Southern Pac. R. R. Co.*, 92 Cal. 288; *Benson* v. *Southern Pac. R. R. Co.*, 98 Cal. 48; *Smith* v. *Occidental etc. S. S. Co.*, 99 Cal. 465; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 56.)

*Fitzgerald & Abbott,* for Respondent.

The objection was properly sustained to the question as to how many pairs of shears for the purpose of cutting iron the Judson company had made, as it tended to raise a collateral issue. (1 Greenleaf on Evidence, sec. 448; *Martinez* v. *Planel*, 36 Cal. 578.) The employee is not bound to furnish the best appliances, but such suitable ones only as are ordinarily found to be safe, and found in general use. (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 48; *Payne* v. *Reese*, 100 Pa. St. 306.) The court properly sustained the objection to the question as to whether or not a crack descending through one side of the casting could not have been discovered by the exercise of ordinary care and precaution. If this was error, it was cured by the witness subsequently testifying to the same matter. (*Conroy* v. *Duane*, 45 Cal. 598; *Branson* v. *Caruthers*, 49 Cal. 375; *Chidester* v. *Consolidated Ditch Co.*, 59 Cal. 197; *Consolidated Nat. Bank* v. *Pacific Coast S. S. Co.*, 95 Cal. 1; 29 Am. St. Rep. 85.) There was no error in granting the nonsuit, as no negligence was shown in the designing, manufacturing or use of the shears. (*Sappenfield* v. *Main Street etc. R. R. Co., supra.*)

Britt, C.—Defendant is a corporation engaged in the business of manufacturing iron and steel machinery. On April 7, 1892, plaintiff was employed at its works, and, while he was assisting in cutting up a plate of boiler iron by means of a pair of shears weighing some twelve tons and operated by steam, the casting forming the body of the lever or upper jaw of the shears broke; a fragment thereof fell upon plaintiff, and he sustained serious injury; he prosecutes this action to recover

damages, claiming that defendant was negligent both in the construction of the shears and the oversight of them after completion. At the trial, plaintiff having closed his evidence, the court directed a nonsuit, observing that a case of ordinary neglect by defendant was not made out.

It seems to have been assumed by the court and the parties on the trial that danger to the person of plaintiff was to be apprehended as a result of the breaking of the shears; this being predicated, there was evidence that the shears were made by defendant itself about October, 1891; the jaw or lever which broke was a heavy casting having a perpendicular section of two feet or more and a breadth of about eight inches; it moved on a horizontal journal which was lubricated through a tube extending from an oilhole at the top of the casting to the journal; oil poured into this tube sometimes ran over on the outside of the casting; when the casting broke, the line of the fracture extended through the same from a point close to the oilhole diagonally downward to the lower side. There was further evidence— not without conflict—that one side of the sectional area exposed by the fracture looked blue and fresh as if then just broken; and that the other side, nearly one-half of the broken surface, was black and more or less stained with oil, as if it had been previously cracked and oil had run down the crack. The exterior of the casting was covered with dust, and it is not claimed that the crack, if any there was before the event in question, was known to anyone or was perceptible by ordinary observation; it was, however, in evidence that such a crack, if it existed, might have been detected by applying tests—as by sounding the casting with a hammer; that the only test of the shears ever made was in their practical operation about the work for which they were constructed, they having previously cut metal much heavier than the piece on which the lever broke; that such shears sometimes break in use, and that shears of

similar character, though of lighter construction, had broken in defendant's works.

Defendant owed to plaintiff, as its servant, the legal duty to exercise ordinary and reasonable care: 1. In the original provision of safe appliances with which he was to work; and 2. In keeping them safe; employing, if necessary for this purpose, such practicable means and tests as common prudence shows to be proper for discovering defects which might occur with time and use. While we have not found in the record any sufficient evidence that the defendant was negligent in the original construction of this machine, yet the evidence was such that the jury might have deduced, as inferences therefrom, that previously to the breaking which was the immediate occasion of injury to plaintiff, the shears were cracked and weakened; that this condition was so far to be reasonably anticipated as to render prudent the adoption of measures for its discovery, and would have been detected by the application of reasonable and not impracticable tests; that such tests were not applied, and that the shears broke on account of such discoverable defect. Whether these inferences, and the conclusion of negligence thereon, should be drawn from the evidence was a question of fact "to be determined from all the circumstances and surroundings of the case" (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 56); as is sometimes said, whether negligence *can* be inferred from the evidence is for the determination of the court, but whether it *ought to* be inferred is a question for the jury; here it might have been, and the court erred in ordering a nonsuit. (*Sappenfield* v. *Main Street etc. R. R. Co., supra; Alexander* v. *Central etc. Co.*, 104 Cal. 522; *Bowman* v. *White*, 110 Cal. 23; *Moynihan* v. *Whidden*, 143 Mass. 287; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282; *Baker* v. *Alleghany etc. R. R. Co.*, 95 Pa. St. 211; 40 Am. Rep. 634; *Brann* v. *Chicago etc. Ry. Co.*, 53 Iowa, 595; 36 Am. Rep. 243; Buswell's Law of Personal Injuries, sec. 194.)

Plaintiff complains of the action of the court in

sustaining objections to sundry questions put to his witnesses. Thus, he inquired of a witness whether instructions were given by those in charge "about picking out quick and active men [to work at the shears], so that they might get away from the shears in case of accident." If such instructions were given, plaintiff was entitled to prove the fact, as tending to show that defendant knew the shears to be a dangerous instrumentality (*Smith* v. *Whittier*, 95 Cal. 279); but the objection made included the points that the question was leading, and asked the opinion of the witness, and we cannot see that it was error to sustain it on these grounds. So, the court refused to allow a question which, counsel said, was designed to show that many other shears made by defendant for cutting iron at its works had broken from defendant's ignorance in their manufacture. While it was permissible to show that similar shears used by defendant broke, which in fact was shown, because this tended to establish the propriety of inspecting such machinery for defects, yet it was not competent to inquire whether such other shears broke because of faulty construction; defendant would have had equal right to rebut the imputation, and so an irrelevant collateral issue would have been tried. (1 Greenleaf on Evidence, 448.) The court rightly sustained an objection to the question put to an expert witness whether a crack descending through one side of the casting "could not have been discovered by the exercise of ordinary care and precaution." He could properly testify (as in effect he did subsequently) that the defect was ascertainable by employing some of the methods described by him, but whether this would have been the "exercise of ordinary care and precaution" was part of the ultimate question of negligence for determination by the jury.

Other assignments of error either are unfounded or relate to matters not of probable occurrence on a new trial, and do not require discussion.

The judgment should be reversed.

VANCLIEF, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.

Hearing in Bank denied.