[S. F. 165.    Department One.—September 5, 1896.]

HENRY C. HIGGINS, RESPONDENT, v. C. B. WILLIAMS ET AL., APPELLANTS.

NEGLIGENCE—MASTER AND SERVANT—UNSAFE APPLIANCE—UNFASTENED PIN—KNOWLEDGE OF SUPERINTENDENT—RESPONSIBILITY OF EMPLOYER. An employer must furnish his employees reasonably suitable and safe machinery and appliances, and keep them in repair and order, and cannot delegate such duty; and a superintendent or foreman of the employer who sets up a machine with an unfastened pin, rendering it defective and unsafe through the absence of a key to hold the pin in place, acts as the representative or agent of the employer, and his knowledge of the defect is the knowledge of the employer, who is responsible for his negligence, and for a resulting injury to a servant from the falling out of the pin.

ID.—CONTRIBUTORY NEGLIGENCE—IGNORANCE OF SERVANT—RISK NOT ASSUMED.—A servant put to work on a machine which is in a defective and unsafe condition, without opportunity given him to examine the machine, has a right to rely on the machine being in a right and safe condition, and, unless he knew, or ought to have known, of the danger to which he was exposed by working near the machine, he cannot be said to have recklessly exposed himself to such danger, or to have voluntarily assumed the risk of working there.

ID.—EMPLOYER'S KNOWLEDGE OF USE OF MACHINE.—It is immaterial whether the employer owned the machine or knew personally of its use before the accident occurred, where it appears that he paid for its transportation and for the use of it by a superintendent whose use of it was the employer's use, and whose knowledge of its defects was the knowledge of the employer.

ID.—REFUSAL OF INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DANGER.—It is not error to refuse an instruction requested by the defendant, which did not include as one of the conditions upon which plaintiff could not maintain his action that he knew, or might have known, that his employment involved danger to himself.

ID.—INSTRUCTIONS SUBSTANTIALLY GIVEN—IMPROPER STATEMENTS.—It is not prejudicial error to refuse instructions when all that is material in them, and applicable to the case, is stated in the instructions given; and any statement in an instruction which is not a statement of any rule of law, or which is not applicable to the facts of the case, is properly refused.

APPEAL from a judgment of the Superior Court of

the City and County of San Francisco and from an order denying a new trial.   JOHN HUNT, Judge.

The facts are stated in the opinion.

*J. C. Bates,* for Appellant.

The nonsuit should have been granted on the ground of failure to prove the allegations of the complaint that the defendants knew of any defect in the machine, and on the ground that the injury was the result of the fault of a fellow servant, and that the defendants are not liable. (*McGlynn* v. *Brodie,* 31 Cal. 376; *Malone* v. *Hawley,* 46 Cal. 413; *Sanborn* v. *Madera Flume etc. Co.,* 70 Cal. 261; *Madden* v. *Occidental etc. S. S. Co.,* 86 Cal. 447; Boswell on Law of Personal Injuries, secs. 111, 144, 204, 213, 214; Civ. Code, sec. 1970; *Noyes* v. *Wood,* 102 Cal. 392; *Stephens* v. *Doe,* 73 Cal. 26; *Fagundes* v. *Central Pac. R. R. Co.,* 79 Cal. 99; *Livingston* v. *Kodiak etc. Co.,* 103 Cal. 258; *McCampbell* v. *Cunard S. S. Co.,* 144 N. Y. 556; *Sherman* v. *Rochester etc. R. R. Co.,* 17 N. Y. 153; *Loughlin* v. *State,* 105 N. Y. 159; *Cregan* v. *Marston,* 126 N. Y. 570; 22 Am. St. Rep. 854; *McGinty* v. *Athol Reservoir Co.,* 155 Mass. 187.)   Instruction I, asked by defendant, that the employee assumes the ordinary risks of the employment, which are apparent, and which he has the opportunity to detect, should have been given.   (Boswell on Law of Personal Injuries, sec. 204; *Malone* v. *Hanley, supra.*)   The court erred in refusing to give defendant's proposed instruction that the employer is not bound to provide machinery or appliances which are absolutely safe, but is only under the obligation to use reasonable and ordinary care, skill, and diligence in furnishing suitable and safe machinery and appliances. (*Brymer* v. *Southern Pacific Co.,* 40 Cal. 497; *Fugler* v. *Bothe,* 117 Mo. 490; *Louisville etc. R. R. Co.* v. *Orr,* 84 Ind. 50; *Payne* v. *Reese,* 100 Pa. St. 301; *Sappenfield* v. *Main Street etc. R. R. Co.,* 91 Cal. 57.)

*C. L. Russell,* and *J. C. Needham,* for Respondent.

The knowledge of the foreman of the defect in the

machine was knowledge of the defendants. (*Dover* v. *Southern Pac. Co.*, 98 Cal. 19; 35 Am. St. Rep. 133; *Elledge* v. *National City Ry. Co.*, 100 Cal. 291; 38 Am. St. Rep. 290; *Nixon* v. *Selby Smelting etc. Co.*, 102 Cal. 460.) The machinery was furnished plaintiff by Wilson as the representative of defendants, and not as a mere coservant of plaintiff (see cases *supra*, and *Beeson* v. *Green Mountain etc. Min. Co.*, 57 Cal. 29; *Ingerman* v. *Moore*, 90 Cal. 420; 25 Am. St. Rep. 138; *Mullin* v. *California etc. Co.*, 105 Cal. 83; *Stephenson* v. *Southern Pac. Co.*, 93 Cal. 561; 27 Am. St. Rep. 223; *Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 265, and cases cited; *McNamara* v. *MacDonough*, 102 Cal. 575, 582; *Fuller* v. *Jewett*, 80 N. Y. 52; 36 Am. Rep. 575); and it was defendant's duty to furnish plaintiff suitable and safe machinery and appliances with which to do the work required of him, and to keep such machinery in repair and order. (*Nixon* v. *Selby Smelting etc. Co.*, *supra*; *Jager* v. *California Bridge Co.*, 104 Cal. 546, and cases cited.) Plaintiff relied on the machine being all right, and he had a right to so rely. (Shearman and Redfield on Negligence, sec. 287; *Magee* v. *North Pac. Coast R. R. Co.*, 78 Cal. 437; 12 Am. St. Rep. 69; *Lee* v. *Southern Pac. R. R. Co.*, 101 Cal. 121; *Colbert* v. *Rankin*, 72 Cal. 197; *Alexander* v. *Central etc. Co.*, 104 Cal. 539; *Bjorman* v. *Fort Bragg Redwood Co.*, 104 Cal. 629.) Upon the evidence introduced, the nonsuit was properly denied. (*Felton* v. *Millard*, 81 Cal. 541; *Higgins* v. *Ragsdale*, 83 Cal. 219; *Palmer* v. *Marysville Democrat Pub. Co.*, 90 Cal. 168.)

BELCHER, C.—The plaintiff, a minor eighteen years of age, was employed by defendants in digging a trench for the construction of a sewer in the city of Modesto. While so employed he was seriously injured by the falling of an iron bucket, which was being used to hoist the earth from the bottom of the trench. He brought this action, by his guardian *ad litem*, to recover damages for the injuries sustained, and recovered a verdict, on which judgment was entered, for the sum of three thou-

sand dollars, from which judgment and an order deny-
ing their motion for a new trial defendants appeal.

Two points only are made for a reversal: 1. That the
court erred in denying defendants' motion for a nonsuit;
2. That the court erred in its instructions to the jury.

The motion for nonsuit was based upon two grounds:
1. That plaintiff had failed to prove that defendants
knew of any defect in the machine by which the bucket
was hoisted; and 2. That the injury to plaintiff was
the result of the fault of a fellow-servant.

It appears that defendants had entered into a con-
tract to construct a system of sewers in the city of
Modesto, and were engaged in performing the contract.
They had intrusted the management of the work to one
Arthur R. Wilson, who was their foreman, and had au-
thority to hire and discharge and direct the men em-
ployed. At the point where the plaintiff was injured
the trench had been sunk to such a depth that it was
necessary to have the earth hoisted by machinery, and
to do this hoisting, Wilson, without the knowledge of
defendants, caused a machine, known as the "Carson
Trench Machine," to be set up and used. The machine
was operated by a steam engine, and by it the buckets
when filled with earth were hoisted, and, after being
emptied, were lowered back to be again filled. The
trench was divided into sections about seven feet long
and five or six feet wide, and in each section two buckets
were used and two men were employed. The machine
was set up and started in the afternoon of one day to see
if everything was in order, and the next day it was
started with a full crew, and, in the afternoon of that
day, the accident happened. About one or half-past one
o'clock of that day plaintiff was directed by Wilson to
go to work in the trench, where the machine was, to
fill empty buckets. As directed, he went to work, and
about two hours thereafter one of the filled buckets
which was being hoisted fell and struck him, causing
the injuries complained of.

One Daniels, who was working in the same section

with plaintiff, was called as a witness for him, and, after describing the machine, stated how the accident happened, as follows: "I made an investigation right then as to the cause of the accident. I found that the pin that held the head block had come out, which was the immediate cause of the accident. That is the head block that held the main cable. . . . . The pin in that block came out, letting the cable down, and the tubs fell, of course. When the pin came out the cable was not detached altogether from the block; the cable was over this block, and the tubs were being hoisted, and while they were being hoisted the pin came out, the block dropped, and the cables gave way and the tubs fell. That pin did not break, it came out. A key was supposed to hold it there. There was no key in the pin; if there had been it would not have come out. Nothing was supposed to hold the block there after the pin came out. . . . . Mr. Wilson, the superintendent, said right after the accident that he knew the key was out. He said he didn't think the pin would come out; that he calculated to have a key put in there, and it rather slipped his mind. . . . . I saw the Carson trench machine partly set up. In a machine they generally put a key in the end of the pin. I did not look to see whether any pin was in there in the block until after the accident occurred. The pin was out of the block then. I did not look at any time to see whether there was a key in the pin, but immediately I looked for the key to see if there was any key there. . . . . Before we went into the trench that block was in plain sight on the machine where we could see it. . . . . I saw the block in plain sight, or could have if I had looked at it. I had as good an opportunity to see it as anybody, and so did Mr. Higgins, I suppose. . . . . The bucket struck Mr. Higgins first before it struck the empty bucket. It hit Mr. Higgins apparently back of the shoulders, right on the shoulders. Mr. Higgins had been standing in the corner as close as he could get; his shovel was standing right up against this partition, and he turned and put his

hand upon the shovel just as the bucket fell.   It struck
Higgins first and then struck the empty bucket—it just
struck the top of my head as it came down, and also
struck Higgins on the shoulder and knocked him down;
a bucket filled with earth maybe two feet deep.   He
was found with the bucket on top of him, resting partly
upon the empty bucket and partly upon him.   The
bucket fell sixteen or eighteen feet."

The above statements were corroborated by other
witnesses, and, among other things, the plaintiff testified:
"I did not know anything about the condition of the
pin or cable before I went into the trench.   I thought
the machinery was all right, or Mr. Wilson would not
send me in there. . . . . I did n't have any opportunity
to examine the machinery prior to going into the trench.
Mr. Wilson did not invite me to look at the machinery.
He invited us to hurry up; he said he wanted to start
the machine, and he told us to get right down."

It was also proved that the pin which held the block
was about one and a quarter inches in diameter and
four or five inches long, and at its lower end was a
small hole through it to put a key in to prevent it from
working up.   "It was such an arrangement as is usually
held fast by a key and not left loose."   The pin when
in place stood about ten or fifteen degrees from perpen-
dicular.

1.  Upon the facts proved the first question is, Did the
court err in denying the motion for nonsuit ?

The rule of law is well settled in this state that it is
the duty of an employer to furnish his employees reas-
onably suitable and safe machinery and appliances with
which to do the work required of them, and to keep
such machinery and appliances in repair and order.
And it is a duty which cannot be delegated to another
so as to exonerate the employer from liability to an
employee who is injured by the omission to perform the
duty, or by its negligent performance.

In *Fuller* v. *Jewett*, 80 N. Y. 52, 36 Am. Rep. 570, the
court said: "In respect to such act or duty, the servant

who undertakes or omits to perform it is the representative of the master and not a mere co-servant/with the one who sustains the injury. The act or omission is the act or omission of the master, irrespective of the grade of the servant whose negligence caused the injury, or of the fact whether it was or was not practicable for the master to act personally, or whether he did or did not do all that he personally could do by selecting competent servants, or otherwise, to secure the safety of his employees." And see *Sanborn* v. *Madera Flume etc. Co.,* 70 Cal. 265, where the above language was quoted approvingly.

In *Davis* v. *Southern Pac. Co.,* 98 Cal. 24, 35 Am. St. Rep. 133, the court said: "If the act was one which it was the duty of the employer to perform toward its servants, and one of them negligently performed it to the injury of another servant in the same common employment, then the offending servant, in the performance of such duty, acted as the representative or agent of his employer, for which the employer is responsible."

And to the same effect are the cases of *Elledge* v. *National City Ry. Co.,* 100 Cal. 282, 38 Am. St. Rep. 290, *Nixon* v. *Selby Smelting etc. Co.,* 102 Cal. 458, and *Mullin* v. *California Horseshoe Co.,* 105 Cal. 77.

It clearly appears that the machine was set up and put to work under the direction and superintendence of Mr. Wilson, who was the foreman and manager for the defendants. It was defective and unsafe, because no key was put in the pin to hold it in place; and hence the accident. Wilson knew of this defect, or should have known of it, and his knowledge was the knowledge of defendants. In performing his duty he acted, not as a fellow-servant with plaintiff, but as the representative or agent of defendant, and for his negligence they are responsible.

It is urged for appellants "that plaintiff had as good a chance to see that the key was out as anyone," and hence that he should not recover. But he did not know that the key was out, and no opportunity to ex-

amine the machine was given him.   He was taken from
other work in another part of the town, and hurriedly
put into the trench to fill buckets with earth.   He re-
lied on the machine being all right, and had a right to
so rely.   (*Magee* v. *North Pac. Coast R. R. Co.*, 78 Cal.
430; 12 Am. St. Rep. 69.)   Besides, unless he also
knew, or ought to have known, of the danger to which
he was exposed by working near the machine, he can-
not be said to have recklessly exposed himself to such
danger, or to have voluntarily assumed the risks of
working there.   (*Sanborn* v. *Madera Flume etc. Co.*, su-
*pra; Colbert* v. *Rankin*, 72 Cal. 197; *Gisson* v. *Schwaba-
cher*, 99 Cal. 419; *Mullin* v. *California Horseshoe Co.*,
*supra.*)

It follows in our opinion that the motion for nonsuit
was properly denied.

2. Appellants complain of instructions, numbered 2,
4 and 5, given to the jury at the request of the plaintiff,
and insist that they were erroneous and misleading.

The instructions referred to read as follows: "2. The
duty which the defendants owed to the plaintiff to fur-
nish him with safe machinery and appliances was a
personal one, and such a duty as the law will not per-
mit them to escape by trusting it to an employee who
negligently performs it."

"4. To render defendants liable to plaintiff in dam-
ages, it is not necessary that they should have had actual
knowledge of the unsafeness of the said machine; the
proof is sufficiently made out by plaintiff when it is
shown that said machine was defective and unsafe in
such respect, that if a proper inspection of it had been
made by defendant, such unsafeness and defectiveness
would have been ascertained in time to prevent the in-
jury.   If the unsafeness was conspicuous, defendants will
be presumed to have had knowledge of it."

"5. The duty of the master to furnish safe machinery
is not affected by the fact that he does not own the ma-
chinery furnished.   It is sufficient if it is used by such
employer.   The duties which an employer owes to his

servants, and which he is required to perform, are to furnish suitable machinery and appliances by which the service is to be performed, and to keep them in repair and order; to exercise ordinary care in the selection and retention of sufficient and competent servants to properly conduct the business in which the servant is employed, and to make such provisions for the safety of employees as will reasonably protect them against the dangers incident to their employment. The performance of these duties cannot be shifted by an employer to a servant, so as to avoid responsibility for the injury caused to another servant by his omission."

It is objected that instructions 2 and 5 were erroneous because they implied that defendants were required to furnish *safe* machinery for plaintiff to work with, when in fact they were only required to furnish *reasonably safe* machinery. But the court was not passing upon the question suggested; it simply in effect told the jury that the duty of defendants to furnish safe machinery was a personal one, which could not be delegated so as to relieve them from responsibility for its negligent performance; and in this there was no error.

It is further objected that instructions 4 and 5 were erroneous because they, in effect, told the jury that to render the defendants liable it was not necessary that they should have had actual notice of the unsafeness of the machine, or have been the owners of it. And it is said that they never saw the machine, or knew of its being used until after the accident, and never authorized its use, and that plaintiff had as good an opportunity to see that the key was out of place as defendants, even if present.

It was entirely immaterial whether defendants owned the machine or knew of its use before the accident occurred or not. They lived in San Francisco, and intrusted the doing of the work to Mr. Wilson. They paid for the transportation of the machine to Modesto, and for the use of it at the rate of eight dollars per day during all the time it was used on this contract, some

three months.  Wilson testified that in his judgment the use of the machine was the best thing to do, and he did it.  His use of it was, therefore, defendants' use of it, and his knowledge of its defects their knowledge.

In *Stephenson* v. *Southern Pac. Co.*, 93 Cal. 561, 27 Am. St. Rep. 223, it is said: "The rule is, of course, well settled that the master is civilly liable for the wrongful or negligent act of the servant committed while in his service and within the scope of his employment—that is, in the transaction of the master's business." And the following language is quoted with approval from the opinion delivered in *Cosgrove* v. *Ogden*, 49 N. Y. 257, 10 Am. Rep. 361: "The test of the master's responsibility for the act of the servant is, not whether such act was done according to the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed by the master to do."

The instructions as given were in our opinion proper and without prejudice to defendants.

The court refused to give the first instruction asked by defendants, and this refusal is assigned as error. The instruction did not include as one of the conditions upon which plaintiff could not maintain his action that he knew, or might have known, that his employment involved danger to himself.  This was an obvious defect in the instruction, and the refusal to give it was therefore not error.   (See cases before cited.)

All that was material in instruction number 6 was given in the exact language asked by defendants.   The part omitted was as follows: "I also instruct you that it was not needful to instruct the plaintiff, although a minor of eighteen years, that if a bucket of five hundred pounds weight should fall on him it would hurt or injure him."  This was not a statement of any rule of law, and the failure to give it did not constitute error.

The court refused to give instruction number 8 asked by defendants, and this refusal is also assigned as error. In *Brymer* v. *Southern Pac. Co.*, 90 Cal. 496, an instruc-

tion in the same words was asked and refused, and the refusal was held to be error. In that case the injury resulted from the breaking of a chain used in raising a derailed and wrecked car, and the defect was latent and concealed, while in this case the defect consisted in failing to put a key in a pin or bolt, and was patent. In some respects, therefore, the instruction was not applicable to the facts of this case. In so far, however, as it was applicable, the law declared in it was clearly stated in other instructions given, and we think that was sufficient. We discover, therefore, no prejudicial error in the refusal.

The judgment and order appealed from should be affirmed.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HARRISON, J., GAROUTTE, J., VAN FLEET, J.

Hearing in Bank denied.