[Civ. No. 937.    Third Appellate District.—September 7, 1912.]

## EUGENE HAYES, Respondent, v. WESTERN FUEL COMPANY, a Corporation, Appellant.

ACTION FOR PERSONAL INJURIES—NEGLIGENCE OF EMPLOYER—DEFECTIVE BUCKET IN UNLOADING VESSEL—KNOWLEDGE OF DEFECT—SUPPORT OF VERDICT.—In an action by an employee engaged in unloading a vessel for negligence of his employer in furnishing a defective bucket for delivering coal therefrom, which overturned in midair and discharged its contents upon plaintiff, to his serious personal injury, where it appears that the employer had knowledge of its defective condition, but negligently continued to use the same, and that the defect was of such a character as to render it unsafe for the purpose intended, it is held that there is evidence sufficient to support the verdict for the plaintiff.

ID.—SUPPORT OF VERDICT AGAINST CONTRIBUTORY NEGLIGENCE.—It is held that the jury was justified in holding that the accident was not due to any contributory negligence of the plaintiff, and that there was no such assumption of risk by him as to relieve the defendant from liability. The servant does not assume the risk that comes from the use of improper appliances.

ID.—DUTY OF MASTER TO FURNISH REASONABLY SAFE APPLIANCES—EXCEPTION—CAUTION.—It is the duty of the master to furnish reasonably safe appliances to the servant for the prosecution of his work, and to exercise reasonable care in keeping such appliances in a safe condition for use, and if an injury results to the servant from the failure of the master to perform this duty, the master is liable for the consequences. But if the master provides and keeps only proper tools or appliances for the use of the servant, and the servant selects one obviously unfit, the master is not liable, though this exception to the master's primary duty must be applied with great caution.

ID.—DUTY OF MASTER TO INSPECT AND CORRECT APPLIANCES BEFORE USE.—It is the duty of the master to inspect appliances and discover their defects before putting them in use, and to use ordinary care, diligence and skill to keep them in good and safe condition. He can neither avoid this responsibility by delegating it to any servant, nor by simply giving general orders that servants shall examine for themselves, before using, what is furnished by him.

ID.—DEFECTIVE BUCKET NOT SELECTED BY PLAINTIFF BUT BY FOREMAN REPRESENTING MASTER.—It appears that the defective bucket was not selected by the plaintiff, but by a foreman, who in the selection of the bucket represented the master, and gave no warning to plaintiff of its defective character; and the jury were properly instructed that the obligation of the master to furnish suitable appliances is a duty which cannot be delegated to another, so as to exonerate the employer from liability for its negligent performance. The act or omission of the foreman was the act or omission of the master, irrespective of his grade.

ID.—BURDEN OF PROOF TO SHOW PLAINTIFF'S KNOWLEDGE OF DEFECTIVE CONDITION OF BUCKET.—The burden of proof rested upon the defendant to show knowledge by the plaintiff of the defective condition of the bucket. It is held that such burden of proof was not sustained, and that there is no direct evidence to show that the plaintiff, as an employee in the hold, had any knowledge of such defective condition; but that the inference is fair and reasonable, from the fact that he had been at work in the hold but a few hours before he was injured by the fall of the bucket, that he was without knowledge of its imperfect condition.

ID.—STATUTORY LIMITATION OF EFFECT OF KNOWLEDGE.—Under section 1970 of the Civil Code as amended in 1907, it is enacted that: "Knowledge by an employee of the defective or unsafe character or condition of any machinery, ways, appliances, or structures of such employer shall not be a bar to recovery for any injury or death caused thereby, unless it shall also appear that such employee fully understood, comprehended and appreciated the dangers incident to the use of such defective machinery, ways, appliances or structures, and thereafter consented to use the same, or continued in the use of the same." It is held that there is no evidence that he had such understanding, comprehension, or appreciation of the dangers incident to the use of the defective bucket.

ID.—ASSUMPTION OF RISK—PROPER INSTRUCTION.—The court properly instructed the jury that: "While the servant assumes all of the ordinary risk of the business in which he is employed, he does not, by reason of his employment, assume the risk of defective premises, machinery, or structures furnished by the master, if the defect was either known to the master, or could have been discovered by the master by a reasonably careful inspection."

ID.—PROPER REFUSAL OF REQUESTED INSTRUCTION AS TO EMPLOYMENT OF BLACKSMITH TO MAKE REPAIRS.—A requested instruction to the effect that the employment of a blacksmith to make repairs of defective buckets or tubs was a discharge of defendant's duty was properly refused, as ignoring the duty of the master, in the first place, to furnish suitable appliances, and as implying that he may relieve himself of responsibility by delegating the task to an employee, although another employee in a different line of work was injured in consequence of the act of one who represents the master in the selection of the appliance, and as lacking in simplicity, and as likely to be misunderstood by the jury, and as being, in so far as correct, fully covered by the other instructions of the court.

ID.—SUPPORT OF SPECIAL FINDING AND GENERAL VERDICT.—It is held that there is evidence to sustain the negative answer of the jury to a special finding submitted upon the question whether "it was the duty of the stevedores employed by the defendant to select a tub or tubs that they were to use in their work from a number of tubs in good repair kept on hand by the defendant"; but it is held that if it were unsupported, it cannot require a reversal, since the general verdict may be sustained upon the theory of defendant's negligence in leaving the defective bucket upon the deck of the vessel, whence it was taken and put into use in the hold.

APPEAL from the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

C. H. Wilson, for Appellant.

Eugene D. Sullivan, and O. K. Cushing, for Respondent.

BURNETT, J.—Respondent was awarded by a jury a verdict for $5,000 for personal injuries received while employed in filling buckets with coal in the hold of a vessel belonging to appellant. The circumstances of the accident, the extent of the damage and the particular ground for charging responsibility to defendant are disclosed in the following allegations of the complaint:

"That on said twenty-sixth day of March, 1907, while plaintiff was so employed by defendant and while he was so engaged in the performance of the duty for which he was employed, to wit, filling said buckets with coal in the hold of said vessel, defendant was hoisting from the hold of said vessel one of said buckets filled with coal, and the same overturned above said hatchway and at a great height, to wit,

seventy-five feet above and directly over the place in said hold where plaintiff was working, and the contents of said bucket, to wit, over one thousand pounds of coal, fell upon and around said plaintiff, and broke and splintered the bones of one of plaintiff's legs so badly that part of said bones had to be removed, and broke two of plaintiff's ribs, and otherwise greatly bruised and injured plaintiff and thereby caused him great pain and suffering.

"That said bucket which overturned and emptied its contents upon plaintiff as aforesaid was at the time, and long prior thereto, defective and broken; that the rim on the upper rear part of said bucket was cracked, thereby causing the latch which is fastened to the bale of said bucket at one end, and to the clutch on the rear of said bucket at the other, and which prevents said bucket from dumping before reaching the defendant's bunkers, to become loosened and thereby causing said bucket to overturn in midair."

It is also alleged that the defendant had knowledge of the defective condition of the bucket, but negligently continued to use it till plaintiff was injured. The answer expressly admitted the employment and the allegations concerning the nature of the work, the character of the accident and the extent of the injury, but denied the other material averments of the complaint and set up as an affirmative defense that the injury was caused by the fault and negligence of the plaintiff, and, furthermore, that said injury was chargeable to the risks of plaintiff's employment at the time of the accident, "which said risks had been and were duly assumed by the plaintiff."

From the standpoint of respondent the case involves primarily the application of the familiar legal doctrine, declared in the decisions over and over again, that it is the duty of the master to furnish reasonably safe appliances to the servant for the prosecution of his work and to exercise reasonable care in keeping said appliances in a safe condition for use, and if an injury results to the servant from the failure of the master to perform this duty, the latter is liable for the consequences. Speaking generally, it may be said that in the record there is found ample support for this theory of respondent. From the direct and circumstantial evidence a rational inference may be drawn that the said coal bucket

was defective as alleged in the complaint, but it was furnished to plaintiff in that condition by appellant; that the defect was of such character as to render it unsafe to use the bucket for the purpose intended; in other words, that it was not reasonably safe to operate it as plaintiff was required to do in the prosecution of his work, and that the accident with the consequent injury would not have occurred had it not been for said defect. But, of course, it does not necessarily follow that plaintiff was entitled to recover. However, in reference to the affirmative defenses of appellant, it is confidently believed that the jury was justified in holding that the accident was not due to any contributory negligence of plaintiff, and that, in a legal sense, there was no such assumption of risk by him as to relieve defendant from liability.

These considerations will receive more specific attention as notice is given to the various contentions of appellant.

Of these, in the foreground of the discussion and manifestly constituting a proposition of vital importance in the determination of the appeal, the assertion is made by counsel that the case comes within the rule, "that where a master provides and keeps proper tools or appliances for the use of his servants and delegates to them the duty of selecting such as they require, then the master is not responsible if the servant voluntarily uses a tool or appliance that has become obviously defective and unfit for use, and is injured by reason thereof."

Concerning this statement of the rule and the propriety of invoking it in the case before us, several suggestions seem not inappropriate. In passing, it may be said that there is some inaccuracy in the language used. It rather implies that if the master provides and keeps *only proper* tools or appliances for the use of the servant, and the servant voluntarily selects therefrom one obviously unfit, the master is not liable. Where only *proper* tools are supplied, it is manifest that no room can be found for the *unfit*. But, interpreting the rule, as no doubt intended, to contemplate the case where a proper tool has become unfit from use and is then selected by the servant, it is clear, upon principle and under the authorities, that the rule must be applied with great caution. Otherwise, we will find the problem embarrassed by the presence of two antagonistic and irreconcilable principles. Since the master

is bound to furnish suitable tools and appliances, the servant may assume, of course, that the master will perform that legal and moral duty.   It necessarily follows that the servant does not assume the risk that comes from the use of unfit and improper appliances.   Nor is the servant required to distrust the fidelity of the master to this obligation, nor does the law demand of the servant that he make an examination or inquiry at his peril to ascertain the fitness of the tool or appliance for the work intended.   This would be in contravention of the doctrine of the master's responsibility for the character of the tools.   Of course, however, the law, as well as common sense and common justice, demands that the servant shall comport himself as upright and reasonable men ordinarily do, and if he discovers the unfitness of the appliance and appreciates the danger incident to its use and, nevertheless, he continues without complaint in the prosecution of the work and injury results, the law, in consonance with the judgment of fair-minded men, exacts of him the penalty for his folly, and attributes the consequences to his own negligence rather than to that of the master.   Furthermore, there may be instances where the defect or unfitness of the appliance is so palpable and obtrusive and the danger incident to its use, under the circumstances disclosed, so palpable, that knowledge of these facts, even in the absence of direct evidence to that effect, must be imputed to the servant.   No circumstance, however, should be permitted to obscure or derogate from the importance of the initial and primary obligation of the master to furnish suitable tools and appliances.

It may be well to notice how the subject has been treated by some of the authorities.

In Bailey's Personal Injuries, volume 1, section 251, it is said: "It is well settled that it is the duty of the master to provide suitable and safe machinery and appliances for the use of his operatives, and it is also settled that the duty does not stop here, but that it is likewise his duty to keep such machinery in proper repair and in safe working order, and if these duties or any of them are negligently performed, and one of the servants thereby sustains an injury, the master is liable, even though he may have intrusted the performance of such duties to subordinates, by whatever name they may be called."

In Shearman and Redfield on Negligence, fifth edition, section 194, the authors, after stating the familiar personal duty of the master to furnish proper tools and implements, declare: "The master is not entitled to time to discover defects in things which are defective when put in use. He should examine them before putting them in use. He cannot evade his responsibility in these respects by simply giving general orders that servants shall examine for themselves, before using the place, materials, etc., furnished by him." In section 194a it is said: "The master is also personally bound, from time to time, to inspect and examine all instrumentalities furnished by him, and to use ordinary care, diligence and skill to keep them in good and safe condition."

In *Daves* v. *Southern Pac. Co.*, 98 Cal. 19, [35 Am. St. Rep. 133, 32 Pac. 708], it is said: "The duties which a railroad corporation owes to its servants and which it is required to perform are to furnish suitable machinery and appliances by which the service is to be performed and to keep them in repair and order. . . . The performance of these duties cannot be shifted by it to a servant so as to avoid responsibility for injury caused to another servant by its omission. Nor is their negligent performance one of the ordinary risks of the service impliedly assumed by the employee by his contract of employment." The doctrine is more elaborately considered and presented in *Sanborn* v. *Madera Flume etc. Co.*, 70 Cal. 261, [11 Pac. 710], and *Tedford* v. *Los Angeles Electric Co.*, 134 Cal. 76, [54 L. R. A. 85, 66 Pac. 76].

Respondent's classification of the cases upon the subject, while probably somewhat arbitrary, possesses merit, and it may be of assistance in the consideration of apparently conflicting decisions. It is thus claimed that "the cases where the servant is injured as a result of some defect in appliances furnished by the master fall into three general classes, as follows: 1. Where there are defects or breaks in appliances furnished by the master which should not be defective or broken. Such is the case here. 2. Where the injury results from some defect in the adjustment or preparation of the appliance, and where the adjustment or preparation is to be done by the servant, and is a part of the work that he is employed to do; obviously different from the case at bar. 3. Where the defect in the appliance is one necessarily attendant upon the use of

the appliance and which is usually repaired by the workman himself and to repair which suitable materials are supplied, or where the appliance is of such a character that the use of it results in a gradual deterioration which ultimately renders it unsafe, as for example, the wearing of a rope, the loosening of a bolt or the dulling of an instrument—also clearly different from the case at bar.'' Under the first class are cited the following cases: *Jager* v. *California Bridge Co.*, 104 Cal. 542, [38 Pac. 413], where plaintiff was injured by the falling upon him of a cross-beam or headblock which became detached from its proper position at the top of a pile-driver, and wherein, in holding defendant responsible for the condition of the appliance, the court said: ''It is not necessary to cite authorities to the point, for the rule is elementary that the same duty devolves upon the master in subsequently maintaining the appliance in a safe and suitable condition as rested upon him when it was originally furnished to his servant''; *Alexander* v. *Central L. & M. Co.*, 104 Cal. 532, [38 Pac. 410], wherein plaintiff was injured by falling from a platform, and the same rule was declared as to defendant's duty to provide a suitable scaffold and platform and to use care afterward in its inspection and supervision for the purpose of discovering the defects that may subsequently appear; *Pacheco* v. *Judson Mfg. Co.*, 113 Cal. 541, [45 Pac. 833], wherein the plaintiff was injured by the breaking of a pair of shears, part of which fell upon him, the court reversing a judgment of nonsuit upon the ground that ''the evidence was such that the jury might have deduced as inferences therefrom, that previously to the breaking which was the immediate occasion of injury to plaintiff, the shears were cracked and weakened; that this condition was so far to be reasonably anticipated as to render prudent the adoption of measures for its discovery, and would have been detected by the application of reasonable and not impracticable tests; that such tests were not applied''; and that, therefore, the defendant might legally have been held responsible for the accident; and *Higgins* v. *Williams*, 114 Cal. 176, [45 Pac. 1041], involving an injury to plaintiff by the falling upon him of an iron bucket which was being used to hoist earth from a trench in which he was working. It appeared that the bucket fell by reason of a pin coming out of a block that held the cable, and the pin should have been kept in

19 Cal. App.—41

place by a key, but there was no key. The court said: "Wilson [the foreman] knew of this defect, or should have known of it, and his knowledge was the knowledge of defendants. In performing his duty he acted not as a fellow-servant with plaintiff, but as representative or agent of defendants and for his negligence they are responsible."

In the second class are placed the following cases cited by appellant: *Burns* v. *Sennett*, 99 Cal. 363, [33 Pac. 916]; *Kerrigan* v. *Market St. Ry.*, 138 Cal. 509, [71 Pac. 621]; *Leishman* v. *Union Iron Works*, 148 Cal. 274, [113 Am. St. Rep. 243, 3 L. R. A., N. S., 500, 83 Pac. 30]; *Manning* v. *Mining Co.*, 149 Cal. 35, [84 Pac. 657]; *Kelley* v. *Norcross*, 121 Mass. 509; *Fraser* v. *Red River Lumber Co.*, 45 Minn. 237, [47 N. W. 785]; *Treka* v. *Burlington etc. Ry. Co.*, 100 Iowa, 200, [69 N. W. 422]. The interesting and specific review of these cases by respondent might well be reproduced if time and space would permit.

The other cases cited by appellant are assigned by respondent to the third class, of which we mention only those from this state, as follows: *Callan* v. *Bull*, 113 Cal. 593, [45 Pac. 1017]; *Helling* v. *Schindler*, 145 Cal. 305, [78 Pac. 710]; *Towne* v. *United etc. Co.*, 146 Cal. 769, [2 Ann. Cas. 905, 70 L. R. A. 214, 81 Pac. 124]. Of these, the Towne case is particularly relied upon by appellant as decisive of the controversy here. This position, it is believed, cannot be maintained, on account of the vital difference between the facts of that case and this. Adopting substantially the language of respondent, we find the Towne case to be as follows: A lineman, in the employ of the defendant, was injured by the falling of an electric light pole which the plaintiff and others were removing from the street. The men were furnished with pike poles, which were about ten or twelve feet in length, about two inches in diameter, one end having an iron ferrule and an iron pike at the end, about one and a half inches in length, to be used in bracing the poles to be removed and to keep them from falling while the man engaged in removing the wires was up the pole. Plaintiff was directed to climb and clear the wires from one of the poles, and another man was directed to brace the pole on its unprotected side with a pike pole. This man took from the pike poles, which were then and there on the ground within reach, a pole which had

become dull and worn at the point, and forced the barbed portion thereof into the electric light pole, about eight feet from the ground, and rested the other end of the pike pole on the ground for the purpose of forming a brace. While plaintiff was at the top of the electric light pole it fell and thereby plaintiff was injured. The pole fell because it was decayed at the ground and because the pike pole, being dull, did not penetrate it a sufficient depth to hold, but broke out or slipped, thus letting the pole fall to the ground. The judgment was reversed on the ground that it was the duty of the servant to know when the pike poles were dull and in need of sharpening and to select one in good order and not to use a dull one. That the Towne case presents an exception to the general rule is pointed out by the supreme court in *Fogarty* v. *Southern Pacific Co.*, 151 Cal. 794, [91 Pac. 652], wherein the court, through Mr. Justice Angellotti, says: ''This rule [the rule in the Towne case] is a qualification of the general rule relative to the duty of the employer to furnish an appliance that is reasonably safe, and to use reasonable care to keep the same in proper repair, and as stated in *Helling* v. *Schindler*, 145 Cal. 303, [78 Pac. 710], it relates only to such slight defects attendant upon the operation of machinery as from their nature require remedying at the hands of the operators themselves and as a part of the proper operation of the machine.'' Additional emphasis is given to the point, it may be said, by respondent's analysis of the cases cited as authority in the Towne decision.

But there are certain vital facts, deducible from the view that we must take of the evidence, some of which will be specified, that render it clear that the rule of the Towne case has no application here. One decisive circumstance is that the bucket, in its defective condition, was furnished by appellant to plaintiff when he began his work. We have a right to infer that it was not selected by plaintiff, furthermore that it was not his duty to select it, and that there was no change in its condition during his employment. The accident occurred the day he was employed and when he began his work, and the manner in which the defective tub was supplied is related by the witness Carlson as follows: ''I was not foreman in the hatch where plaintiff was working, but I was foreman on the other hatch. When I found that tub was broken, I took it

out of the hatch and landed it on the deck. That was the first day we started to work on that steamer. Hayes was hurt the next day. Before he was hurt, Ben Cline's gang came and took that tub from the deck where I had put it and went aft to their hatch. Ben Cline was foreman of the Hayes gang. I do not know what that gang did with the tub after I saw it run to their own hatch. Q. And it was while Cline had the gang of men unloading coal from the hatch next to yourself that he came and took that tub away, was it? A. Yes, sir.'' There is no evidence that Hayes was among the ''gang'' that took the tub. From circumstances which we will not stop to detail it is fairly inferable that he was not. But, at any rate, the tub was placed on the deck by the foreman of one hatch, who knew and apparently gave no warning of its defective condition, whence the bucket was taken, under the direction of the foreman of the hatch in which plaintiff was employed and there put to use without the latter's attention having been called to any defect or unfitness in said appliance. The jury were justified in concluding that it was the duty and the custom of the foreman of the hatch to obtain and supply the buckets for the use of the workmen, and they were correctly instructed that the obligation of the master to furnish suitable appliances and to keep them in repair and order ''is a duty which cannot be delegated to another, so as to exonerate the employer from liability to an employee who is injured by omission to perform the duty or by its negligent performance. In respect to such act or duty, the servant who undertakes or omits to perform it is the representative of the master. The act or omission is the act or omission of the master, irrespective of the grade of the servant whose negligence caused the injury, or of the fact whether it was or was not practicable for the master to act himself.'' (*Higgins* v. *Williams,* 114 Cal. 176, [45 Pac. 1041]; *O'Connell* v. *United Railroads of San Francisco,* 19 Cal. App. 36, [124 Pac. 1022].)

Again, the burden was upon appellant to show that respondent actually had or ought to have had knowledge of the defective condition of said bucket. From the record we can say that neither inference is so imperative as to exclude any other rational conclusion. Indeed, there is no direct evidence upon the subject of plaintiff's actual knowledge, neither party having seen fit, apparently, to question him concerning it.

One of the fellow-workmen, so he testified, discovered the defect before the accident occurred, but there is no evidence that he directed to it in any manner the attention of respondent, nor can we say that the blemish was so obvious as to require plaintiff to be held to the responsibility of actual knowledge. On the contrary, incomplete as the record is in this respect, considering the fact that plaintiff was at work in the hold of the vessel and for only a few hours, with nothing apparently to excite his special attention to the bucket or to arouse his suspicions, the inference is quite fair and reasonable and not subject to legal stricture, that he was without knowledge of said imperfection.

In brief, therefore, under the settled principles of appellate practice, the record presents us the case of a master furnishing his servant with a defective appliance, not only with the presumption of knowledge which the law imposes, but with actual knowledge of its unfitness, and giving no information of its condition to the servant, who does not know and is not required to know that the appliance is otherwise than normal, and injury subsequently resulting from the use of said appliance. Hence, the general rule contended for by respondent is rendered clearly applicable.

Besides, the law of the servant's responsibility in operation at the time of this accident was somewhat different from its condition when the Towne case was decided. In 1907 section 1970 of the Civil Code was amended, in addition to other respects, by adding the provision that "Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways, appliances or structures of such employer shall not be a bar to recovery for any injury or death caused thereby, unless it shall also appear that such employee fully understood, comprehended and appreciated the dangers incident to the use of such defective machinery, ways, appliances or structures, and thereafter consented to use the same, or continued in the use of the same."

There is not only no evidence that plaintiff "fully understood, comprehended and appreciated" the dangers incident to the use of said defective bucket, but it is quite reasonable to hold that if he knew of the defect, he believed there was no additional danger incident thereto. Indeed, defendant denied under oath not only that the bucket was broken or defective,

but also that it ever turned by reason of any broken or defective condition, and an effort was made at the trial to show that the defect did not add to the peril of plaintiff's situation. Legally, respondent had as much right as appellant to be mistaken in that particular.

This effort to prove that the bucket could be safely operated has given rise to one point of controversy in reference to a ruling of the court. The witness Olinder, a blacksmith, who had been in the employ of defendant for several years and whose duty it was to repair the tubs and machinery generally, after stating that following the accident he discovered that a bolt was missing from the tub, was asked the question: "Will the absence of the bolt produce such a looseness that it would dump?" Assuming that the question involved a matter of expert testimony, it is entirely apparent, as pointed out by respondent, that the ruling sustaining an objection was not prejudicially erroneous for the reason that plaintiff in his complaint did not count upon any such defect, and for the reason that the ground was entirely covered by the witness in answer to other questions.

There are two assignments of error in relation to the instructions.

As we understand the law of negligence, one phase of it was correctly given by the court as follows: "While the servant assumes all the ordinary risks of the business in which he is employed, he does not, by reason of his employment, assume the risk of defective premises, machinery or structures furnished by the master, if the defect was either known to the master, or could have been discovered by the master by a reasonably careful inspection." Appellant's objection to the instruction is stated in this language: "This instruction tells the jury that the defendant is liable in this case if they find that its tub was defective, and that it knew of or could have discovered the defect by a reasonably careful inspection, and that the plaintiff did not assume the ordinary risks of the business which were known to the defendant or could have been discovered by him."

In this appellant is clearly in error. The court was not dealing with the ordinary risks of the business, but with the *extraordinary* condition occasioned by the act of the master in supplying defective appliances. Since it is the duty of the

master to furnish safe appliances, he must be primarily and legally accountable for the consequences of his failure to observe his duty in that respect. The other contingency suggested by appellant was covered by the court in additional instructions, one of which contained this statement: "An employer is not bound to indemnify his employee for losses suffered by the employee in consequence of the ordinary risks of the business in which he is employed."

Appellant complains of the action of the court in refusing to give the following instruction: "If you find from the evidence that the tubs furnished for the use of the defendant's employees were of the kind ordinarily used for the purpose by employers in the same line of business in the community, and if you find that the defendant at the time complained of employed a blacksmith to keep the tubs in repair, and if you further find the defendant kept on hand a number of tubs in good repair, ready for use, any one of which could have been had and used by the employees at the time complained of, and if you further find that it was the duty of defendant's employees to select for use tubs in good repair and discontinue the use of any tub that became defective while in use, then I charge you that the defendant performed its whole duty toward the plaintiff, and is not responsible in this case, even though you find that the employees selected for use a defective tub from among those in good repair kept on hand by defendant, or even though you find that the employees continued to use a tub after it became obviously defective. In such case your verdict must be for the defendant." There are several objections to the instruction, as suggested by respondent. Probably the vital one is that it ignores and virtually nullifies the importance of the duty of the master in the first place to furnish suitable appliances. It also implies that he may relieve himself of this responsibility by delegating the task to an employee, although another employee in a different line of work may be injured in consequence of the act of the one who represents the principal in the selection of the appliance. There is a formal objection also that it lacks simplicity and was likely to be misunderstood by the jury. Again, it is apparent that the particular phase of the law of negligence intended to be reached by said instruction was fully covered by other instructions which were certainly

exceedingly favorable to appellant.   Indeed, the charge of the court, taken in its entirety, seems to have left nothing lacking for the faithful guidance of the jury.

We are convinced that there is support in the evidence for the negative answer of the jury to the question: "Do you find from the evidence that it was the duty of the stevedores employed by the defendant to select a tub or tubs that they were to use in their work from a number of tubs in good repair kept on hand by the defendant?"   But even if not supported, the circumstance would not require a reversal of the case, since the general verdict could be sustained upon the theory of defendant's negligence in leaving the defective bucket upon the deck of the vessel, whence it was taken and put into use in the hold.

It would be pleasing to follow more closely and completely the interesting argument of counsel, but the length of this opinion already invites apology.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.