CHOCTAW, OKLAHOMA & GULF RAILROAD COMPANY
*v.* TENNESSEE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH
CIRCUIT.

No. 67. Submitted November 10, 1903.—Decided November 30, 1903.

Where it appears by an examination of the entire charge to the jury that the court understood the true rule as to defendant's liability and the jury were informed of the limitations thereon, no exceptions being taken except to a single detached remark, and no request being made to the court to restate the rule with his attention called to the defective portion of his charge, the judgment will not be reversed because in certain detached and incidental remarks made in regard to defendant's liability the court failed to state the proper limitation of liability, it also appearing that the remarks were used under such circumstances as made it absolutely certain that the jury was not misled thereby.

THE defendant in error commenced this action against the railroad company, plaintiff in error, in the Pulaski Circuit Court in the State of Arkansas, to recover damages for personal injuries sustained by him by reason of the alleged negligence of the company. He alleged in his complaint that on February 6, 1900, while engaged as head brakeman on a freight train of the defendant company, and while in the discharge of his duty as such, in the town of Argenta, near Little Rock, Arkansas, he attempted to jump upon the pilot of the engine of the train of which he was head brakeman, at a time when the engine was proceeding very slowly (about four miles an hour) in the freight yards. That in attempting to jump upon the pilot he stepped on an iron stirrup or step on the pilot or "cow-catcher" of the engine, and where in the performance of his duty he was accustomed to step, and by reason of its being in a weak and unstable condition it gave way and precipitated him to the ground, where he became entangled in the ties of the railroad track and the train ran over his left leg and bruised and mangled the same so that he was compelled to have it amputated near the knee. He alleged that the defendant was negligent in the construction of the step and was negligent in permitting it to stay in a faulty and infirm condition, and the condition of the step was unknown to the plaintiff; that he might have escaped uninjured but for the negligent construction of the track, the ties of which stood up above the ground, so that he was unable to get his foot out in time to prevent the engine from running over his leg and crushing it.

The defendant is a corporation organized and incorporated under an act of Congress, and on that ground removed the case into the United States Circuit Court in Arkansas, and thereafter served its answer to the complaint. It denied all negligence, and alleged that the plaintiff was attempting to step upon the front end of the engine, which was unnecessary and which was careless and improper on his part, and that he was not required in the discharge of his duty, nor was it necessary for him to attempt to so ride, and in attempting to do

so he was violating the rules of the company. It denied that the step on the pilot was in a weak and unstable condition or that it gave way and thereby precipitated the plaintiff to the ground, and denied that the condition of the step had anything to do with the precipitation of the plaintiff to the ground, which resulted in his injury, and it denied that the condition of the step was unknown to the plaintiff.

Upon these issues the case came to trial and resulted in a verdict for the plaintiff, which, upon appeal to the Circuit Court of Appeals, was affirmed, 116 Fed. Rep. 23, and the railroad company then sued out this writ of error.

*Mr. Edward B. Peirce* for plaintiff in error.

*Mr. John W. Blackwood* for defendant in error.

. Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

This is quite a simple case, although counsel on both sides have exhibited very great industry in presenting in their briefs in the greatest detail the substance of all the evidence that was given upon the trial.

After the evidence was in a motion was made on the part of the defendant company that the jury should be instructed to find a verdict for the defendant, for the reason that there was not sufficient evidence to sustain a verdict for the plaintiff. The denial of this motion brings up the question whether there was sufficient evidence upon which to base a recovery, and it is upon that question that the briefs of counsel have been so full. It is wholly unnecessary to follow counsel in their minute details of this evidence. It is sufficient for us to say that it tended to show the following among other facts:

He was the head brakeman of the train, and as such his particular position, when running into freight yards like the one at Argenta, was on the front of the engine to enable him

to attend to the switches promptly, as they were encountered, and to prevent the danger of running off the track; that the only rule of the company which was promulgated and which he ever saw in regard to the matter of riding on the pilot of the engine was one warning the employés not to jump on or off an engine when it was running at a "high rate of speed." The plaintiff said that he had never received instructions not to ride on the front end of the engine, but on the contrary had often been commanded by conductors to do so; that on the occasion of the accident the engine was moving very slowly, not more than four miles an hour, and that when the plaintiff attempted to board the pilot of the engine and received the injury complained of he was discharging his duty in the proper and customary manner of a head brakeman under like circumstances.

The accident occurred about ten o'clock on a dark night, and the plaintiff carried a lantern to enable him to see to properly discharge his duties in regard to switches; the pilots of freight engines are provided with a step or stirrup on which to place the foot, and where it is customary for the head brakeman to stand when coming into the freight yard under the circumstances detailed, and the engine in question had such a step or stirrup. When the plaintiff attempted on this occasion, after having attended to one of the switches, to get on the engine, then moving about four miles an hour, he placed his foot on the step mentioned, and it gave way or went down under him, and his foot came to the ground under one of the ties, the space between the ties not being filled in, and he was unable to get it out in time to prevent being run over. This step or stirrup had been in a defective condition for some time, and it was so loose three or four days prior to the accident that a witness and employé of the defendant had at that time warned a fellow brakeman not to step on it because of the condition it was then in. The plaintiff had no knowledge that the step was out of repair or defective before the accident occurred. This freight yard where the accident occurred had

been constructed a few months before and the company had but just commenced to use it in which to park and make up its trains; that the plaintiff, on account of some physical disability keeping him off the road for a short period before the accident, had run into this yard only once or twice before the accident occurred, and was not very familiar with its condition at the time in question. He had never been on track No. 3, where he was hurt, until the evening of the accident, and he had no information concerning the condition of that track prior to being injured. The plaintiff testified—

"When I stepped on the engine, this step was on the pilot about as wide as my hand. I stepped up on it with the hollow of my foot and leaned over to catch hold of the top of the pilot and my foot went down with the step, and I hallooed as soon as it went down and fell, and I couldn't get my foot out and the pilot run over my leg. My leg got in between the ties and I pulled with all my might to get it out, but I seen I couldn't get it out and just give up and let it go. My foot got hung between the ties, between the bottom of the ties, and held it fast. . . . . I hallooed as loud as I could to make the engineer hear me, but he didn't see me. He must have felt that the wheel of the engine hit something because he stopped the engine right where the engineer gets up into the engine. The step of the engine stopped right at me. I hallooed as loud as I could. When I got my foot caught in there the train ran over me and mashed my leg—mashed it all to pieces; broke the bone, mashed my knee cap all to pieces. I suffered just as near death as any man could suffer and not die. It wouldn't have been as hard to die."

Plaintiff testified that he thought that if the track had been filled in his foot would not have been caught and that he could have extricated himself when the stirrup on the pilot gave way. Other evidence was given on the part of plaintiff of the same general nature.

On the other hand, the defendant gave evidence tending to show that although it was customary to surface up the tracks

in depot yards by filling in between the ties, yet as this was a new yard it was in the condition in which newly constructed yards are usually left for some time to permit the water to drain off. Evidence was also given tending to show the impropriety of the plaintiff's attempting to get on the engine while it was in motion and that it was a violation of the rules of the company.

Taking all the evidence we are of opinion that there was enough to demand its submission to the jury, and if by that body found to be true, it was enough upon which to found a verdict for the plaintiff.

The chief ground upon which the demand for a new trial is founded outside of the above rests upon certain portions of the charge of the court to the jury in speaking of the law relating to the responsibility of an employer to his servant to furnish proper machinery and applicances for his employé. In two or three places, in the course of his charge to the jury upon that subject, the court, in speaking of the testimony in regard to the facts occurring at the time of the accident, said that the company owed to its employés the duty of furnishing machinery in a reasonably safe condition and a reasonably safe place for the servant to work in the discharge of his duties, and a failure to do so makes the company liable in damages for any injuries sustained by the servant while in the discharge of his duties, if the servant's own acts of negligence do not contribute to the accident.

The fault found with this observation is that the court should have added that the company did not absolutely guarantee to furnish its employés a reasonably safe place to work and reasonably safe machinery with which to discharge their duties, but that it fulfilled its obligations if it observed reasonable care to furnish its employés those reasonably safe places to work, etc.

It need not be questioned that the charge of the court, without the limitation proposed, was an erroneous exposition of the law. *Hough* v. *Railway Co.,* 100 U. S. 213; *Union Pacific*

*Railway Co.* v. *O'Brien,* 161 U. S. 451, 457, and cases cited. A careful reading of the charge, however, shows that upon the particular occasions when these remarks were made the judge was endeavoring to draw the attention of the jury more to the question whether the defendant had in fact furnished machinery in a reasonably safe condition than to the question of its obligation to use due diligence to furnish the same.

An exception was taken to but one of the remarks of the court upon this particular subject, and if the defendant had felt that there was really any danger of any misunderstanding of the rule which should govern the jury, a request to the court to restate the rule, with his attention specially called to the defective portion of the charge, would without doubt have received the immediate attention of the court and obtained a charge upon the subject as requested. We say that, because in looking through this charge it is perfectly plain that the court understood the true rule that it was necessary to show that the company had been negligent in not taking reasonable precautions to furnish proper machinery and appliances in order to become liable for the injury sustained by the employé. The jury were told by the court that, in order to find the defendant liable, it must determine from the evidence whether the step or plate in front of the engine and attached to the pilot, and which plaintiff tried to step on at the time of the accident, was by reason of the defendant's negligence insecurely fastened, and that by reason of its being insecurely fastened the plaintiff fell and was injured as alleged.

The court also charged the jury that, unless it was shown by the evidence that the employer or master was guilty of negligence in its failure to provide such a safe place for the servant to perform his duties, as under like conditions others in similar businesses are in the habit of furnishing, the defendant would not be liable. He further said that it was left to the judgment of the jury to determine from the evidence whether the railroad company was guilty of negligence in allowing at that time and place the track to remain with the

spaces between the cross ties unfilled, and that they were to consider the fact that this yard had but recently been made, and that was a pertinent fact in relation to the question of the negligence of the company.

Again, the court at almost the end of his charge stated that if this plate had been properly fastened when the train left for its destination, and had been inspected at a proper and suitable time by the defendant, and was found to be in perfect condition, and that within a short time before the accident occurred something unknown or unforeseen had caused it to become loose, "Then, gentlemen of the jury, they would not be guilty of negligence, because then they would have exercised due diligence for the purpose of ascertaining whether everything was in perfect order."

And once more the court said:

"Now then, that you are to consider:

"If you find that it has exercised due diligence, such as any ordinary reasonable man would exercise in matters of that kind, then it would not be liable.

"But, on the other hand, if they had not, and it was loose, or if it was loose at such time that by the exercise of reasonable or ordinary diligence they could have discovered it and repaired it, and that was the cause of the accident, they have been guilty of such negligence as makes them liable.

"Of course, so far as the railroad company is concerned, it does not, in any event, become the insurer of its servants' or employés' safety, regardless of its own diligence; all it undertakes to do is to keep the machinery and its right of way and place where they work in good and proper order, and use such diligence as a prudent man and careful man would use. And the company is not liable for any defect of which an employé has knowledge at the time."

These observations were at the very conclusion of the charge.

We think it clearly appears that the right directions were given to the jury in regard to the legal responsibility of the defendant, and that the detached and incidental remarks made

in regard to such liability, where they failed to state the proper limitation of liability, were used under such circumstances as to make it absolutely certain that the jury were not misled thereby.

Many exceptions were taken in regard to the admissibility of evidence during the trial of the cause and to the refusal of the court to charge as requested by the defendant. We have examined them all and are entirely satisfied that no error was committed by the court in the disposition it made of them. Many of the requests to charge were covered by the charge of the court actually given, and many others were but partially correct and so mingled with erroneous statements of the law as to warrant the court in rejecting them.

The judgment of the Circuit Court of Appeals for the Eighth Circuit must, therefore, be

*Affirmed.*