CHICAGO GREAT WESTERN RY. CO. v. McDONOUGH.

(Circuit Court of Appeals, Eighth Circuit.    April 27, 1908.)

No. 2,405.

1. APPEAL AND ERROR—PRACTICE—ASSIGNMENTS OF ERROR.

The practice of filing interminable assignments of error tends to defeat the purpose of the rule requiring such assignments, and is not to be approved.

2. TRIAL—CHARGE TO JURY—TO BE CONSIDERED AS A WHOLE RATHER THAN IN FRAGMENTS.

In examining the charge, for the purpose of ascertaining its correctness in point of law, the whole scope and bearing of it must be taken together. It is wholly inadmissible to take up single or detached passages, and to decide upon them without attending to the context, or without incorporating such qualifications and explanations as naturally flow from the language of other parts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 703–717.]

3. SAME—CHARGE TO JURY—GENERAL EXCEPTION UNAVAILING.

A general exception to a considerable portion of the charge cannot be regarded as presenting a specific objection to a lesser portion, which in fairness to the trial court should have been specially called to its attention. in order that the appropriate correction might be made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 689.]

4. SAME—RELATIVE WEIGHT OF AFFIRMATIVE AND NEGATIVE TESTIMONY—INSTRUCTION.

The rule that affirmative testimony is to be preferred to negative is not absolute, and whether or not in any particular case it shall be called to the attention of the jury is so largely in the discretion of the trial judge that the refusal to do so is not ordinarily reversible error.

5. MASTER AND SERVANT—ASSUMPTION OF RISK—DEFECTIVE MACHINERY—SERVANT NOT REQUIRED TO EXERCISE CARE TO DISCOVER DANGERS.

In determining whether a servant assumed the risk of injury incident to the use of a boiler negligently permitted by the master to become unfit and unsafe for use, the true test is, not whether the servant exercised care to discover dangers, but whether they were known to him, or were so patent as to be readily observable by him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey; 38 C. C. A. 314.]

6. APPEAL AND ERROR—EXPERT EVIDENCE—QUALIFICATIONS OF WITNESS.

Whether or not a witness tendered as an expert possesses the requisite qualifications rests largely in the discretion of the trial court, and its decision thereon ought not to be disturbed unless it can be said that it was clearly erroneous.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3852.]

7. EVIDENCE—EXPERT EVIDENCE—HYPOTHETICAL QUESTIONS.

Hypothetical questions propounded to an expert witness are not objectionable merely because the evidence tending to establish the facts assumed therein is contradicted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2368–2375.]

8. NEGLIGENCE—STANDARD OF REASONABLE CARE—PRACTICE OF OTHERS—EVIDENCE—INSTRUCTION.

The controlling standard or test of reasonable or ordinary care is what a reasonably prudent person would ordinarily have done in the like cir-

161 F.—42

cumstances, rather than the prevailing practice of others engaged in the same business. The practice of others, even though not a general or prevailing one is some evidence of what could have been done, and so has a material bearing upon whether the requisite care was exercised in what was actually done; and an instruction which treats what a reasonably prudent person would ordinarily have done in the like circumstances as the controlling standard or test of reasonable or ordinary care, and also treats the prevailing practice of others engaged in the same business as evidence only of that standard, and directs that such practice be considered with all the other evidence bearing upon the subject in fixing upon that standard, is not objectionable as permitting the jury to find that the conduct in question was negligent, even though it conformed to the prevailing practice of others, because that practice was not in itself the legal standard, but, as indicated in the instruction, was evidence only thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 6, 371–377.]

9. STEAM—INJURIES FROM PRODUCTION OR USE—EVIDENCE OF OTHER SIMILAR ACCIDENTS.

In an action for injuries sustained through a boiler explosion, where the gravamen of the charge was that the defendant had negligently failed to exercise reasonable care in maintaining the boiler in a reasonably safe condition, evidence of recurring explosions, not otherwise explained, occurring in the course of its prior use, when the conditions were substantially the same, was admissible as bearing upon its tendency to become impaired by the particular use to which it was subjected, the defendant's knowledge of that tendency, and the precautions which, in the exercise of reasonable or ordinary care, should have been taken thereafter in inspecting and testing it to determine whether it was in reasonably safe condition for use; but such evidence was not admissible for any other purpose.

10. SAME—EVIDENCE OF CONDITIONS AFTER ACCIDENT.

Evidence of the condition, shortly after an accident, of the instrumentality which caused it, is admissible as bearing upon its condition at the time of the accident, or just prior thereto, when it appears that there has been no intervening change.

11. TRIAL—PRACTICE—MOTION TO STRIKE OUT EVIDENCE SOME OF WHICH IS UNOBJECTIONABLE.

Upon a motion to strike out all evidence relating to a specified subject, some of which is unobjectionable, the court, while at liberty to select or separate what is objectionable from what is unobjectionable, and to strike out the former, is not obliged to do so, but may respond to the motion in the terms in which it is made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 248.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Thomas D. Healy (A. G. Briggs, John L. Erdall, M. F. Healy, and Robert Healy, on the brief), for plaintiff in error.

Sylvester Flynn and Robert M. Wright (J. W. Henneberry, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

VAN DEVANTER, Circuit Judge. This case arose out of the explosion of a stationary boiler in the car shops of the Chicago Great Western Railway Company at Oelwein, Iowa, whereby severe and

permanent personal injuries were inflicted upon John A. McDonough, the fireman who was attending the boiler at the time. In the Circuit Court he obtained a verdict and judgment against the railway company, and it now insists that error prejudicial to it was committed in the progress of the trial.

There was nothing very unusual about the case as it was presented in the Circuit Court, as respects either the volume of evidence produced or the number of questions of law arising for decision, and yet more than 60 assignments of error are made and seemingly relied upon. All of these have been attentively considered, but we feel constrained to repeat the admonition given in Michigan Home Colony Co. v. Tabor, 72 C. C. A. 480, 141 Fed. 332, that:

"The practice of filing such a large number of assignments cannot be approved. It thwarts the purpose sought to be subserved by the rule requiring any assignments. It points to nothing. It leaves opposing counsel and the court as much in the dark concerning what is relied on as if no assignments were filed."

And we also repeat the observation made in Shepard v. United States, 85 C. C. A. ——, 160 Fed. 584, 592, that, generally speaking:

"Such interminable assignments, instead of impressing the court with the thought of an imperfect trial, rather cast discredit upon the worth of any of them."

Of the issues presented by the pleadings it is enough to say that the petition charged that the defendant failed to exercise reasonable care in inspecting the boiler and in otherwise maintaining it in a reasonably safe condition for use, that its water tubes or flues were thereby permitted to become and to remain worn, burned, blistered, and weakened to a degree which made the boiler unfit and unsafe for use, and that by reason thereof the explosion occurred and the plaintiff was injured, and also to say that the answer denied the negligence charged against the defendant, and alleged that the plaintiff contributed to his injuries by his own negligence, and that they resulted from an assumed risk. The plea of contributory negligence was withdrawn from the jury, with the assent of the defendant, because not sustained by any evidence; so it need not be further noticed.

At the close of the evidence the court declined to direct a verdict for the defendant, and error is assigned thereon; but as a careful reading of the evidence set forth in the bill of exceptions satisfies us that the jury reasonably could have found therefrom that the defendant was negligent substantially as charged, that the plaintiff did not assume the extraordinary risks arising out of such negligence (see Chicago, Milwaukee & St. Paul Railway Co. v. Donovan, 85 C. C. A. ——, 160 Fed. 826), and that it was the proximate cause of his injuries, we think the ruling was right.

Several assignments call in question the refusal to give various instructions, and the giving of others, defining the issues presented by the pleadings, the elements of a right of recovery on the part of the plaintiff, the measure of care which the defendant was required to exercise for the plaintiff's protection, the burden of proof, the probative force of the accident itself, and what might rightly be

considered in determining the weight to be given to the testimony of the several witnesses. None of these assignments is well grounded; nor is it necessary to take them up in detail here. All that was material and otherwise unobjectionable in the instructions refused was substantially and fairly incorporated in the charge given. It was in the main exceptionally pertinent, plain, full, and accurate. But some portions of it, if separated from the rest, would justly be regarded, as objectionable. That, however, is not a fair test of their meaning, for, as was said in Magniac v. Thompson, 7 Pet. 348, 390, 8 L. Ed. 709, and Spring Co. v. Edgar, 99 U. S. 645, 659, 25 L. Ed. 487:

"In examining the charge, for the purpose of ascertaining its correctness in point of law, the whole scope and bearing of it must be taken together. It is wholly inadmissible to take up single and detached passages, and to decide upon them without attending to the context, or without incorporating such qualifications and explanations as naturally flow from the language of other parts of the charge. In short, we are to construe the whole as it must have been understood, both by the court and the jury, at the time when it was delivered."

A reading of the entire charge makes it plain that the faults in the portions covered by these assignments were inadvertent, rather than intentional, and were so fully corrected by the effect of the charge as a whole that the jury could not have been misled or confused by them. They, therefore, afford no ground for complaint. Railroad Co. v. Gladmon, 15 Wall. 401, 409, 21 L. Ed. 114; Evanston v. Gunn, 99 U. S. 660, 668, 25 L. Ed. 306; Baltimore & Potomac R. R. Co. v. Mackey, 157 U. S. 72, 86, 15 Sup. Ct. 491, 39 L. Ed. 624. Besides, if the defendant entertained any fear that the jury would be misled or confused by that which was faulty, it should, in fairness to the court, have specially called attention thereto, in order that the appropriate correction could be made. Baltimore & Potomac R. R. Co. v. Mackey, supra; Choctaw, Oklahoma & Gulf Ry. Co. v. Tennessee, 191 U. S. 326, 332, 24 Sup. Ct. 99, 48 L. Ed. 201; McDermott v. Severe, 202 U. S. 600, 610, 26 Sup. Ct. 709, 50 L. Ed. 1162. This was not done, but instead a general exception was taken to each of several considerable portions of the charge, covering matter that was unobjectionable along with that which was faulty.

Among the instructions requested was one to the effect that, if the witnesses for the defendant, who testified affirmatively to the making of certain inspections and tests of the boiler, and the witnesses for the plaintiff, whose testimony upon that question was of a negative character, were equally credible, the testimony of the former was entitled to the greater weight; and complaint is made because it was refused. The existence of the rule upon which the request was predicated and the propriety of calling it to the attention of the jury, when there is warrant therefor in the evidence, are not open to question in this jurisdiction. Stitt v. Huidekopers, 17 Wall. 384, 394, 21 L. Ed. 644; Denver & R. G. Co. v. Lorentzen, 24 C. C. A. 592, 594, 79 Fed. 291; Rhodes v. United States, 25 C. C. A. 186, 189, 79 Fed. 740. But the rule is not absolute. Chicago & N W. Ry. Co. v. Andrews, 64 C. C. A. 399, 404, 130 Fed. 65; Baltimore & O. R. Co. v. Baldwin, 75 C. C. A. 211, 144 Fed. 53. And whether or not in

any particular case it shall be called to the attention of the jury is so largely in the discretion of the trial judge that the refusal to do so is not ordinarily reversible error. Denver & R. G. R. Co. v. Lorentzen, supra; Olsen v. Oregon, etc., Co., 9 Utah, 129, 140, 33 Pac. 623. Here some of the testimony for the plaintiff, although negative in character, was so substantial that we cannot say that the refusal was error.

In furtherance of its claim that the plaintiff's injuries resulted from an assumed risk, the defendant preferred several requests for instructions bearing upon that subject, each of which was constructed upon the theory that the risks assumed by a servant include such as arise out of defective appliances or machinery negligently provided by the master, if the servant knows of the defect, or "by the exercise of ordinary care" ought to know of it. These were refused, and the jury were instructed, in effect, that, if the boiler had been negligently permitted to become unfit and unsafe for use as charged, and its condition was known to the plaintiff, or was plainly observable by him, he then, but not otherwise, assumed the risks incident to its continued use in that condition. These rulings are assigned as error; but we think the Circuit Court took the right view of the question, for the true test, in respect of risks arising out of the master's negligence, is not whether the servant exercised care to discover dangers, but whether they were known to him, or were so patent as to be readily observable by him. Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 671, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Choctaw, Oklahoma & Gulf R. R. Co. v. Holloway, 191 U. S. 334, 337, 24 Sup. Ct. 102, 48 L. Ed. 207; Texas & Pacific Ry. Co. v. Swearingen, 196 U. S. 51, 62, 25 Sup. Ct. 164, 49 L. Ed. 382; Missouri, Kansas & Texas Ry. Co. v. Wilhoit, 85 C. C. A. ——, 160 Fed. 440; Kirkpatrick v. St. Louis & San Francisco Ry. Co., 85 C. C. A. ——, 159 Fed. 855.

It is complained that one Saddler, a witness for the plaintiff, was permitted to qualify as an expert, in respect of the tests to which boilers should be subjected, by stating that he was qualified to testify upon that subject, and was permitted to so testify when it plainly appeared that he was not qualified. The first part of the complaint has reference to the following in his testimony:

"Q. Well, is your knowledge, from reading and observation and your experience as a boiler maker, such as to enable you to determine what tests boilers should be subjected to generally? A. I think it is."

There was nothing objectionable in this. It was only preliminary or precautionary, and was not made the test of his qualification. He was also required to state the extent of his reading, observation, and experience, and it was in the light of that testimony that he was held to be qualified. The second part of the complaint has reference to the fact that, while he stated that he had had 12 years of experience in the actual construction, inspection, and testing of different types of boilers, both locomotive and stationary, he also stated that he had not come in contact with any of the same type as the one which ex-

ploded, and that his knowledge of its construction and principle of operation was confined to what was disclosed at the trial and to what he had read in a book obtained from the town library and then in the courtroom. Whether or not, in the light of these statements, and of the differences between the boiler in question and those which had come under his observation—and the record makes it plain that he accurately understood these differences—he was qualified to testify as an expert, upon the subject to which his attention was directed, was a matter which rested largely in the discretion of the trial court, and its decision thereon ought not to be disturbed, unless we can say that it was clearly erroneous. Spring Co. v. Edgar, 99 U. S. 645, 658, 25 L. Ed. 487; Montana Ry. Co. v. Warren, 137 U. S. 348, 353, 11 Sup. Ct. 96, 34 L. Ed. 681; Chateaugay Iron Co. v. Blake, 144 U. S. 476, 484, 12 Sup. Ct. 731, 36 L. Ed. 510; Gila River R. R. Co. v. Lyon, 203 U. S. 465, 475, 27 Sup. Ct. 145, 51 L. Ed. 276. We cannot so say. Indeed, a careful examination of the testimony given by the witness satisfies us that he was qualified.

As bearing upon the frequency with which, in the exercise of reasonable care, the boiler should have been cleaned and inspected, the plaintiff was permitted to give in evidence certain opinions of experts elicited by hypothetical questions in which it was assumed that in such cleaning as had actually occurred prior to the explosion it had been found that some of the tubes or flues, especially those nearest to the fire, were obstructed or choked with incrustations to such an extent as to prevent the free passage through them of the water drill and the air hammer, appliances used in cleaning them; and it is urged that this was error, because there was no proper evidence upon which to base the assumption upon which the opinions were given. The contention involves a misconception of what evidence was produced, as a brief reference to some of it will show. A witness, who had been the assistant engineer at the defendant's Oelwein shops at and prior to the time of the explosion, testified:

"Mud and scale are the obstructions that are found in the flues. This mud and scale comes from impurities deposited in the water. It is hardest in the front set, which is most directly exposed to the fire. * * * Q. Do you know whether or not there was any trouble in cleaning out any of the flues? A. Yes; I do. Q. And what was the trouble? A. There seemed to be some obstruction that prevented the water cleaner from passing freely through the tubes. Q. What tubes were these—the tubes in the front set, or the tubes in the rear set or the middle set? A. I couldn't take my oath as to what particular tubes they were—flue or flues. When the obstruction is least serious the water drill or water cleaner is used, and when this does not answer the air hammer is used. * * * A boiler can be washed out in two or three days. * * * The condition of the boiler, as to whether it is clogged, determines the length of time necessary. * * * If the water cleaner won't remove the scales, and the incrustations are too solid to be removed, then the air hammer is used."

And another witness, who was one of the defendant's boiler washers prior to the explosion, testified:

"Q. Now, what can you say as to the circulating tube; that is, the tube that runs in the form of an arc or circle, and connects the two upper drums? A. The upper circulating tubes, or the lower ones? Q. The lower ones. A. Well, it was most generally always pretty well clogged up. Q. How did

you clean that? A. With the air hammer. * * * Q. Did you leave any of those circulating tubes without cleaning them? A. No, sir. Q. When you say that they would be filled, or partly filled, you mean that they were in that condition when you began the work? A. Yes, sir."

True, there was evidence tending to contradict part of this; but that did not affect the plaintiff's right to elicit the opinions of experts upon the hypothesis of the truth of what his evidence tended to prove. Jackson v. Burnham, 20 Colo. 532, 39 Pac. 577; Louisville, etc., Co. v. Falvey, 104 Ind. 409, 413, 3 N. E. 389, 4 N. E. 908; Orient Ins. Co. v. Leonard, 57 C. C. A. 176, 120 Fed. 808.

One of the questions to which much evidence was addressed was whether or not, in the exercise of reasonable care, the boiler should have been subjected to the hydraulic test more frequently than was done. This test was applied in 1898 or 1899 when the boiler was installed, in 1901 following general repairs, and possibly again two years before the accident in question. To sustain the affirmative of the question, the plaintiff introduced the testimony of experts to the effect that, when the tubes or flues of a boiler become incrusted as before described, the fire and flame to which they are subjected in ordinary use have a tendency to burn, blister, and weaken them, and therefore to increase the occasion for inspecting and testing them; that the hydraulic test was a known and practical one, applicable alike to all types of stationary boilers, and was more efficient than other tests; that it should have been applied once in each year, and whenever there were circumstances tending to excite suspicion as to the safety of the boiler; and that such was the practice of the Chicago & Northwestern Railway Company, and possibly of some other owners of stationary boilers. The defendant excepted to the admission of the evidence of the practice of the Chicago & Northwestern Railway Company, and now contends that, while evidence of a general practice of that character among boiler owners would have been admissible, it was not permissible to show anything short of a general practice. In our opinion the evidence was properly admitted. The Chicago & Northwestern Railway Company had long owned and operated many stationary boilers in the various shops connected with its extensive railroad, several of which were in the same region as the shops of the defendant, and the fact that the practice stated was followed by that company was some evidence of what could have been done by the defendant, and so had a material bearing upon whether it exercised reasonable care in what was actually done. This is illustrated, as we think, in Washington, etc., R. R. Co. v. McDade, 135 U. S. 554, 574, 10 Sup. Ct. 1044, 34 L. Ed. 235, where, in quoting approvingly from Myers v. Hudson Iron Co., 150 Mass. 125, 138, 22 N. E. 631, 633, 15 Am. St. Rep. 176, it was said:

"The plaintiffs were allowed to show that other machinery or appliances than those used by the defendant would have been safer; for example, a strap brake, a friction V, so called, or a reversible engine. In order to aid the jury in determining whether the defendant had exercised reasonable care in providing and maintaining the machinery actually in use, it was competent to show what other kinds of machinery or appliances were used elsewhere, and might have been used in shaft No. 1. Wheeler v. Wason Manuf. Co., 135 Mass. 294, 298. It does not follow from the introduction of such evidence that

the defendant was bound to use the very safest, or newest, or any particular, machinery or appliances; but, as 'reasonable care' is a relative term, the jury might properly consider what could be done to secure safety, and the evidence was competent."

The defendant did not question that there was a general practice among owners of stationary boilers to subject them to the hydraulic test when they were installed and following general repairs; but it introduced the testimony of several witnesses to the effect that this practice did not include the application of such test at other times, and that it was not so applied in the shops of ten or more railroad and other companies with which they had been connected. Some of these witnesses, however, conceded that to have so applied it was practicable, would have disclosed any serious impairment of the resisting power of the boiler, and would not have strained or injured it, if it was in reasonably safe condition. In that connection the defendant requested that the following instruction be given:

"Evidence as to custom has been received to throw light upon the question of what method, system or custom as to tests and inspection are ordinarily and usually exercised by ordinary prudent persons operating steam boilers. You are told that the standard of care to be applied, in order to determine whether or not defendant is negligent, cannot be measured by the custom and practice of a single employer so operating steam boilers, or made to depend upon the custom and practice of such single employer. The defendant was bound only to exercise such reasonable care and prudence as an ordinarily prudent person, operating such steam boilers in his business, would exercise under like circumstances; and if you find such care was exercised, you cannot find the defendant negligent for failure to adopt such system of inspection as a single employer has adopted, if that system was not in general use and not usually employed by ordinarily careful and prudent persons under like circumstances."

The request was refused, and the following instruction was given:

"As bearing upon this question of inspection, and the failure to inspect is one of the charges that the plaintiff makes against the defendant, you are to consider all the testimony in the case bearing upon it. There has been a great deal of it. It is your province to determine, and in doing so you are to consider all the facts and all the evidence that is shown here before you, and determine whether or not the defendant has exercised that degree of care in so doing that a reasonable and prudent person, under the circumstances and surroundings that existed there at Oelwein at that time, would have exercised. * * * While the conduct of the other companies is not necessarily conclusive here, because the conditions may vary somewhat from the conditions surrounding this situation at Oelwein, still it is proper for you to consider what they do in determining whether the defendant in this case has exercised that degree of care that the law required. * * * There is no definite rule which will determine the number of times that the boiler or the flues in the boiler should be cleaned, or what particular tests should be applied to them to determine whether or not they were in a reasonably safe condition. That depends upon the circumstances of the particular situation in this case, what was the character of the water that was used in those boilers, what was the amount of sediment or deposit that is left in them, and what was the character of that sediment when it was subjected to the fire; and from the character and quality of the water and the sediment that it produced, and the nature of that sediment and all the other facts shown by the evidence, you will say what would have been the frequency of the cleaning of the boiler that a reasonable and prudent person would ordinarily have done to have kept it in a reasonably safe condition for use, and whatever such a person would have done under the circumstances of the situation there at Oelwein the defendant was required to do and no more and no less. * * * If you should find that

this explosion * * * was because of some latent defect in the flue, some hidden defect there, that could not be discovered by ordinary care and reasonable diligence, why the defendant would not be liable. * * * The defendant is not required to furnish the best and safest appliances that can be obtained in the market. It is required to furnish only those that a reasonable and prudent person would furnish as applicable to the purpose for which they were to be used and the circumstances under which they were to be used."

It is said that the action of the court in this matter was error, because it permitted the jury to test the character of the defendant's conduct, in respect of the application of the hydraulic test, by the practice of the Chicago & Northwestern Railway Company alone, and because it permitted them to find that the defendant was negligent, even though they believed from the evidence that its conduct conformed to the prevailing practice among boiler owners. The contention must fail. It rests upon a misconception of the true import of the instruction given, and also confuses the controlling standard of reasonable or ordinary care with what is only evidence thereof. Instead of being permitted to test the character of the defendant's conduct by the practice of the Chicago & Northwestern Railway Company alone, the jury were required to test it by what a reasonably prudent person would ordinarily have done in the like circumstances, as disclosed by all the evidence, including that relating to the conduct or practice of other boiler owners; and the test so prescribed, rather than the usual conduct or prevailing practice of others, was the controlling standard of reasonable or ordinary care. What was done by others, even though usually done, was evidence only of that standard, and was to be considered and weighed with the other evidence, and not to the exclusion thereof. A particularly apt and comprehensive statement of the law on this subject is found in Prof. Wigmore's recent treatise on Evidence, where it is said (volume 1, § 461):

"The distinction is in itself a simple one: (1) The conduct of others evidences the tendency of the thing in question; and such conduct—e. g., in using brakes on a hill, felt shoes in a powder factory, railings around a machine, or in not using them—is receivable with other evidence showing the tendency of the thing as dangerous, defective, or the reverse. But this is only evidence. The jury may find from other evidence that the thing was in fact dangerous, defective, or the reverse, and that its maintenance was or was not negligence in spite of the above evidence. (2) Meanwhile the substantive law tells them what the standard of conduct for negligence is; and this standard is a fixed one, independent of the actual conduct of others. To take that conduct as furnishing a sufficient legal standard of negligence would be to abandon the standard set by the substantive law, and would be improper. This conduct of others, then, (1) is receivable as some evidence of the nature of the thing in question, because it indicates what is the influence of the thing on the ordinary person in that situation; but (2) it is not to be taken as fixing a legal standard for the conduct required by law. This distinction is patent enough, but it is sometimes judicially ignored. Such evidence is sometimes improperly excluded on the erroneous supposition that the mere reception of it implies that it is to serve as a legal standard of conduct. The proper method is to receive it, with an express caution that it is merely evidential, and is not to serve as a legal standard."

And such is plainly the effect of the decisions of the Supreme Court of the United States. Grand Trunk R. R. Co. v. Richardson, 91 U. S. 454, 469, 23 L. Ed. 356; Wabash Railway Co. v. McDaniels, 107

U. S. 454, 461, 2 Sup. Ct. 932, 27 L. Ed. 605; Northern Pacific R. R. Co. v. Mares, 123 U. S. 710, 719, 721, 8 Sup. Ct. 321, 31 L. Ed. 296; Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 470, 23 Sup. Ct. 622, 47 L. Ed. 905.

In the McDaniels Case it was said by Mr. Justice Harlan:

"If the general practice of such corporations in the appointment of servants is evidence which a jury may consider in determining whether, in the particular case, the requisite degree of care was observed, such practice cannot be taken as conclusive upon the inquiry as to the care which ought to have been exercised. A degree of care ordinarily exercised in such matters may not be due care, or reasonable care, or proper care, and therefore not ordinary care within the meaning of the law."

In the Mares Case the following instruction, given at the request of the plaintiff over the objection of the defendant, was fully approved:

"Ordinary or due care in such cases is not merely such care as other railroad companies exercise under like circumstances, for other railroad companies may be careless. Ordinary care in the selection or retention of servants in such cases implies that degree of diligence and precaution which the exigencies of the particular service reasonably require—that is, such care as, in view of the consequences that may result from negligence on the part of employés, is fairly commensurate with the perils or dangers likely to be encountered."

In the Behymer Case, where error was alleged because of a refusal to rule that the defendant's liability for injuries sustained by the plaintiff, in being thrown from a freight train of which he was brakeman by a sudden jerk thereof, "depended on whether the freight train was handled in the usual and ordinary way," it was said by Mr. Justice Holmes:

"Instead of that, the court left it to the jury to say whether the train was handled with ordinary care; that is, the care that a person of ordinary prudence would use under the same circumstances. This exception needs no discussion. The charge embodied one of the commonplaces of the law. What usually is done may be evidence of what ought to be done; but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

And in the recent case of Shandrew v. Chicago, Milwaukee & St. Paul Railway Co., 73 C. C. A. 430, 434, 142 Fed. 320, 324, it was said by Judge Adams, in speaking for this court:

"What other railroad companies did is not in itself a standard of care for the defendant, but is evidence only of that standard. It is evidence that the jury may consider under proper instructions in determining whether this defendant exercised ordinary care; that is, such care as other prudent persons engaged in the same business ordinarily exercised. The Supreme Court of the United States well expressed this thought in the case of Texas & Pacific Railway Co. v. Behymer. * * * From these observations it appears that the proof of what other railroads did under similar circumstances was properly treated in these instructions as evidence only of the standard of that ordinary care which the law required the defendant to observe."

Tested by the result of these decisions, the instruction given accurately stated what consideration should be given to the practices of other boiler owners, including the Chicago & Northwestern Railway Company.

The explosion in question occurred in June, 1904, and resulted from the bursting of one of the tubes or flues nearest the fire, when the pressure was only normal, or the usual working pressure. Over the defendant's objection, evidence was admitted of a similar explosion in 1900, something over a year after the boiler was installed, of two others in the fall of 1901, and of still another in the fall of 1903. The admissiblity of this evidence is one of the questions presented by the assignments of error. It was admitted as tending to show some notice to the defendant of the probable length of time that the tubes or flues could be used with reasonable safety, in the conditions surrounding their use in that boiler, and as bearing upon the precautions which, in the exercise of reasonable or ordinary care, should have been taken thereafter in inspecting and testing them to determine whether they were in reasonably safe condition to be used; and the jury were plainly instructed that it could be considered for that purpose, and none other, and particularly that it could not be regarded as evidence of any negligence at the times of the prior explosions. Considering the restricted purpose for which the jury were permitted to consider it, we entertain no doubt that it was properly admitted. What is reasonable or ordinary care in the inspection and testing of a boiler depends in part upon its tendency to become impaired by use, because to be reasonable or ordinary the care must be proportionate to the danger; and as the tendency to impairment results from natural laws, and usually is continuous, the observed exhibitions thereof in the past are generally indicative of what may be expected in the future. In consequence, due regard for them must be had in what is done to make the future use reasonably safe, and when the reasonableness of what is so done becomes the subject of inquiry they have a material bearing thereon. Recurring explosions, such as were shown at the trial, when there is no other known cause for them, are indicative of a pronounced and dangerous tendency to impairment, to which the care to be exercised in future inspection and testing must be proportionate. As quite apposite, we quote from Dr. Wharton's work on Evidence (volume 1, §§ 40, 41), wherein, after a reference to the general rule which excludes evidence of other independent, though similar, acts of negligence, it is said:

> "But when a party is charged with the negligent use of a specific agency, and when the case against him is that he did not use care proportionate to the danger, then the question becomes material whether he knew, or ought to have known, the extent of the danger. On such an issue as this it is relevant for the party aggrieved to put in evidence of disconnected acts, of which it was the duty of the defendant to have been cognizant, and which, if he were cognizant of them, would have advised him of the extent of the danger, and would have made it his duty to take precautions which would, if faithfully applied, have prevented the injury sued for."

An instructive and leading case upon the subject is Morse v. Minneapolis & St. Louis Ry. Co., 30 Minn. 465, 471, 16 N. W. 358, 361, where recovery was sought for injuries sustained in the derailment of an engine which was alleged to have been caused by a defective switch, and where the plaintiff was permitted, for the purpose of showing the defective character and dangerous tendency of the switch,

to prove that other engines and cars had left the track at the same point. In holding this evidence admissible for the purpose stated, it was said by the late Judge Mitchell:

"It is, of course, not competent for the purpose of showing independent acts of negligence; but we think on principle it is clearly admissible when it tends to show that the common cause of these accidents is a dangerous or unsafe thing. It would be certainly competent to prove by an expert that, at a time either before or after the accident, when the instrument claimed to have caused it was in the same condition as when the accident complained of occurred, he examined and experimented with it, and found it capable of producing like results. Hence there seems no reason for excluding ordinary experience, when confined within the same limits and for the same purpose. These effects are in the nature of experiments to show the actual condition of the instrument. Upon any issue as to the condition or safety of any work of human construction designed for practical use, evidence showing how it has served, when put to the use for which it was designed, would seem to bear directly upon the issue. It is sometimes objected that this presents new and collateral issues of which a defendant has no notice. In a certain sense every item of evidence material to the main issue introduces a new issue; that is, it calls for a reply. In no other sense does it make a new issue. Its only importance is that it bears on the main issue, and, if it does, it is competent. Evidence of similar accidents resulting from the same cause has often been held competent for the purpose referred to. Kent v. Town of Lincoln, 32 Vt. 591; Quinlan v. City of Utica, 11 Hun (N. Y.) 217; Willey v. Portsmouth, 35 N. H. 303; Chicago v. Powers, 42 Ill. 169, 89 Am. Dec. 418; Piggott v. Eastern Cos. R. Co., 3 C. B. 229; House v. Metcalf, 27 Conn. 631; Hill v. P. & R. R. Cos., 55 Me. 438, 92 Am. Dec. 601.; Darling v. Westmoreland, 52 N. H. 401, 13 Am. Rep. 55. But to render such evidence competent it must appear, or at least the evidence must reasonably tend to show, that the instrument or agency whose condition is in issue was in substantially the same condition at such times as it was at the time when the accident complained of occurred."

True, this view is rejected by some of the courts; but the reasoning upon which it is founded is sustained by controlling decisions of the Supreme Court of the United States, and by many other satisfactory decisions. Grand Trunk R. R. Co. v. Richardson, 91 U. S. 454, 470, 23 L. Ed. 356; District of Columbia v. Arms, 107 U. S. 519, 524, 2 Sup. Ct. 840, 27 L. Ed. 618; Vicksburg, etc., R. R. Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257; Texas & Pacific Ry. Co. v. Watson, 190 U. S. 287, 289, 23 Sup. Ct. 681, 47 L. Ed. 1057; Chicago, etc., Co. v. Gilbert, 3 C. C. A. 264, 52 Fed. 711; Gulf, etc., Co. v. Johnson, 4 C. C. A. 447, 54 Fed. 474; Central Vermont R. R. Co. v. Soper, 8 C. C. A. 341, 353, 59 Fed. 879; Chicago, etc., Co. v. Netolicky, 14 C. C. A. 615, 622, 67 Fed. 665; Wabash Screen Door Co. v. Black, 61 C. C. A. 639, 645, 126 Fed. 721; McCarragher v. Rogers, 120 N. Y. 526, 24 N. E. 812; Findlay Brewing Co. v. Bauer, 50 Ohio St. 560, 35 N. E. 55; City of Bloomington v. Legg, 151 Ill. 9, 37 N. E. 696, 42 Am. St. Rep. 216; Frohs v. City of Dubuque, 109 Iowa, 219, 80 N. W. 341; Colorado, etc., Co. v. Rees, 21 Colo. 435, 440, 42 Pac. 42; Pacheco v. Judson Mfg. Co., 113 Cal. 541, 45 Pac. 833; Yates v. City of Covington, 119 Ky. 228, 83 S. W. 592; Myers v. Hudson Iron Co., 150 Mass. 125, 131, 138, 22 N. E. 631, 15 Am. St. Rep. 176, 1 Wigmore, Ev. § 458.

But it is urged that this evidence was not admissible, because the conditions at the times of the prior explosions were not substantially

the same as those at the time of the explosion in question. If the premise be correct, the conclusion undoubtedly follows. Is the premise correct? Primarily, it is well to observe that sameness in every detail is not necessary, but only similarity in essential conditions; that is, in such as reasonably might be supposed to affect the tendency in question. 1 Wigmore, Ev. § 442. The changes relied upon are (1) that following the later of the two explosions in 1901 the tubes nearest the fire were all taken out and replaced by new ones, and (2) that in 1902 the source from which water was secured for the boiler was changed, and thereafter the water was subjected to filtration before it entered the boiler. As both changes were effected before the explosion in the fall of 1903, it is plain that they produced no dissimilarity between the conditions at the time of that explosion and those at the time of the succeeding one in 1904, when the plaintiff was injured. All the explosions occurred in the tubes nearest the fire, where, according to the undisputed evidence, the tendency to impairment was the greatest. These had been in use something over a year at the time of the explosion in 1900, and all but a few of them had been in use something over two years at the time of the explosions in 1901. Obviously, the removal of the old tubes and the substitution of new ones, following these explosions, produced for a time a substantial change in the conditions, because it eliminated the prior use to which the old tubes had been subjected. But it had ceased to be operative, in any substantial sense, at the time of the explosions in 1903 and 1904; for the new tubes, which were like the old ones, had then been subjected to the same kind and amount of use as had the old ones at the times of the earlier explosions.

We pass, therefore, to the other change. The only way in which it could have materially altered the conditions was in preventing or lessening the incrustation of the tubes. But the evidence, including that for the defendant, tended strongly to establish that it did not have any appreciable effect in that regard; that thereafter, as before, the incrustations in the tubes nearest the fire were not infrequently "like granite or crockery—that is, harder, you might say, than iron or steel"—and as much as one-sixteenth of an inch in thickness, which was one-half the thickness of the tubes; and that the filtration, while removing some of the sediment from the water, had but little effect upon other impurities, which, under the influence of the great heat to which the water was subjected, attached themselves to the tubes in the form of these hard and particularly objectionable incrustations. We cannot say, therefore, that this change was sufficiently substantial to render the evidence of the earlier explosions inadmissible; and we more readily give effect to this conclusion because the jury were instructed that, in determining whether the defendant had exercised reasonable care in cleaning and testing the boiler, they should consider, in connection with the other evidence bearing thereon, the character of the water that was used, and the amount and nature of the sediment or deposit that it left in the tubes when subjected to the fire, which, of course, required them to consider any improvement in that respect that may have resulted from changing the source from which the water was secured and subjecting it to filtration.

Finally, it is complained that error was committed in admitting, and afterwards in refusing to strike out, evidence showing the removal and condition of 11 of the tubes or flues immediately following the explosion in question. As respects the evidence of their removal, it is enough to say that it was not offered or admitted as an admission or confession that the tubes were defective, or that the defendant had been in any manner negligent, but only as a mere incident in showing their condition; some of the witnesses having examined them as they were being removed, and others after their removal was accomplished. Besides, the fact of their removal was shown by the defendant in the same incidental way. As respects the rulings in respect of the evidence of their condition, the facts are these: When plaintiff's counsel indicated his purpose to offer such evidence, the court interposed:

"Well, I understand it is for the purpose of showing the condition of the flues at the time of the accident."

And plaintiff's counsel replied:

"Yes, sir; it is for the purpose of showing the condition of the flues, so far as we can, at the time of the accident."

Plaintiff's counsel then inquired of a witness, who was present when the flues were removed:

"Will you describe the condition of the flues that were taken out? I allude now to the condition when they were taken out."

Whereupon defendant's counsel objected that this was "seeking to elicit evidence to establish negligence by a condition found subsequent to the explosion." The objection was overruled, the defendant excepting, and, without any further objection, testimony was elicited from that witness and others tending to show that some of the flues were slightly warped, that the one which burst and caused the explosion was reduced in thickness at the place of the rent or rupture, and that it and others were pitted, blistered, and burned. Subsequently the defendant requested that all of this evidence be stricken out, because it related to "a condition subsequent to the accident," and because the disturbance wrought by the explosion made it of no value for the purpose for which it was offered. The request was denied, the defendant excepting, and, in its charge to the jury, the court referred to this evidence, saying that it—

"was admitted for the purpose of more accurately and clearly showing you the actual condition of those flues at the time of that accident, and for no other purpose, and you will consider it for that alone, and not as evidence of neglect on the part of the defendant company. There is also testimony which tends to show that the explosion itself might have affected or changed the actual condition of the flues or the boiler at the time of the explosion. You have heard that testimony, and, like the other testimony in the case, it is for you to say to what extent those flues were injured by the effect of the explosion itself. And from all the testimony you will say what was the actual condition of those flues at the time just prior to the explosion which resulted in the injury of Mr. McDonough. The testimony was admitted for that purpose, and will be considered for that purpose alone."

It is not here seriously insisted that the evidence that the flue which burst and others were pitted, blistered, and burned was inadmissible,

and, if it were, we would have to hold otherwise. It was made perfectly plain that the explosion could not have wrought any change in that respect, and therefore that, if that was their condition immediately following the explosion, it must also have been their condition just prior to the explosion. There was, however, substantial evidence which tended quite persuasively to show that the reduced thickness of the flue which burst and the warping of others could as well be attributed to the force of the explosion as to anything which had occurred in their prior use; and it may be that it would not have been error to have stricken out the evidence of their being in that condition. 6 Thompson, Neg. § 7870. But in our opinion the defendant is not in a position to complain that this evidence was admitted or that it was not stricken out. The objection interposed when the after condition of the flues was about to be shown was not tenable, because it was nothing less than an assertion that no evidence of that character was admissible for the purpose indicated, which was not the case, as the authorities amply show. Droney v. Doherty, 186 Mass. 205, 71 N. E. 547; Creamery Package Mfg. Co. v. Hotsenpiller, 159 Ind. 99, 64 N. E. 600; 1 Wigmore, Ev. § 437. And the motion to strike out was in terms directed against "all evidence" of that character, and so covered that relating to the pitted, blistered, and burned condition of some of the flues, as well as that which it is now said was objectionable. To have sustained the motion in the terms in which it was made would undoubtedly have been error, and yet the court was not bound to do more than to respond to it as made. As has been well said:

"Courts of justice are not obliged to modify the propositions submitted by counsel, so as to make them fit the case. If they do not fit, that is enough to authorize their rejection." Elliott v. Piersol, 1 Pet. (U. S.) 328, 338, 7 L. Ed. 164.

But this does not mean that the court is not at liberty, on such a motion, to select or separate objectionable evidence from what is unobjectionable, and to strike out the former, but only that it is not obliged to do so. Elliott v. Piersol, supra; Moore v. Bank of Metropolis, 13 Pet. (U. S.) 302, 310, 10 L. Ed. 172; United States v. McMasters, 4 Wall. (U. S.) 680, 682, 18 L. Ed. 311; Smith v. Brown, 8 Kan. 609, 619; Louisville, etc., Co. v. Falvey, 104 Ind. 409, 416, 3 N. E. 389, 392, 4 N. E. 908; Jones v. State, 118 Ind. 39, 20 N. E. 634; Davis v. Hopkins, 18 Colo. 155, 32 Pac. 70. It follows that the instruction relating to the evidence of the after condition of the flues put that matter before the jury in as favorable a light for the defendant as, in the circumstances, it was entitled to demand.

In what has been said it has been assumed, for present purposes only, that the evidence of the reduced thickness of the flue which burst and of the slight warping of others might well have been stricken out; but we would not be understood as holding that, if that had been properly requested, the refusal to do so would have been reversible error. See Holmes v. Goldsmith, 147 U. S. 150, 164, 13 Sup. Ct. 288, 37 L. Ed. 118. That question is not here, and requires no further notice.

We find no error in the record, and the judgment is affirmed.