**RAWSON v. AGWILINES, Inc.**

United States District Court
S. D. New York.
May 8, 1945.

Abraham M. Fisch, New York City (Harold H. Corbin, New York City, of counsel), for plaintiff.

Burlingham, Veeder, Clark & Hupper, New York City (C. B. M. O'Kelley, New York City, of counsel), for defendant.

KENNEDY, District Judge.

Defendant moves to set aside a jury verdict for the plaintiff in the amount of twenty eight thousand dollars. The action is brought by a stevedore who was badly injured while at work on board the S. S. Cape Charles, a vessel owned by the United States of America. The defendant had entered into a contract with the government applying to the Cape Charles. This agreement is in evidence, and I will not at this point attempt to characterize it. Suffice it to say that I sent the case to the jury on the theory that the defendant had a duty to maintain the ship's gear, plaintiff claiming that his injuries were solely attributable to defects in a chain bridle furnished by the ship.

Defendant now moves to set the verdict aside and for a directed verdict in its favor, urging that the jury's verdict was against the weight of evidence. In its brief, defendant urges two grounds in support of the motion. In order to understand these contentions, it is necessary to say something about the facts in the case.

The stevedore gang with which plaintiff was working was, just prior to the accident, covering hatch No. 1 before quitting for the day. The Cape Charles is equipped with steel pontoon hatch covers. Each hatch cover has six separate sections, each section weighing about 2500 pounds and being 4 feet wide, 24 feet long and 18 inches deep. Inside and below the hatch coaming is a steel ledge upon which the cover sections rest. The stevedores were putting on the cover sections by the use of the cargo booms, working from the forward end of the hatch toward the after end. Each cover section in turn was picked up by the burton boom, swung into place and then lowered by the up and down boom. The fall was secured to the cover sections by a chain bridle, with two legs. It was not disputed that the bridle legs were made fast to the cover sections in a cater-corner fashion, at least until the sections were landed on the ledge where they belonged.

After the first four sections had been properly placed, it was found that the up and down boom was so rigged that the fifth section could not be swung far enough aft for it to reach its proper position over the square of the hatch. The cover was therefore landed on top of the fourth section, which, as I have said, was in its place. Instead of topping the boom, the stevedore boss, one Wharton, then elected to reeve the fall through a snatch block somewhere in the vicinity of the foot of a mast which was some distance abaft the hatch, and then to lead the fall more or less parallel to the deck forward to the fifth hatch cover section. Rigged in this way the fall could then drag the cover section off the place where it rested, and into the groove (ledge) where it belonged. It was during this operation that plaintiff was injured. The bridle parted, apparently in both legs at once, lashed aft between the winches, and struck the plaintiff.

I turn now to the contentions which the defendant makes in this motion to set aside the verdict, following the order of its brief.

 Defendant says that the chain bridle was designed only for the purpose of lifting and lowering the covers into place, and not for the purpose of dragging them in the manner that I have described. There was, however, evidence at the trial that there is in the Port of New York a general custom of sliding hatch covers into place by the use of snatch blocks. In substance, the boss of the stevedore gang excused his failure to top the boom on the basis that it was quicker to use the snatch block, and because of this custom. I was as careful as I could be to instruct the jury that they could not accept any proof of such a custom unless they found it was reasonable, uniform, well settled, not in opposition to law, and so well established that it was known or should have been known and accepted by the defendant. The whole matter seemed to me to be an issue of fact. I cautioned the jury that they could not accept this evidence about custom if the stevedores were guilty of recklessness, Vanderlinden v. Lorentzen, 2 Cir., 139 F.2d 995, and that the claimed custom was merely one phase of plaintiff's claim,

Chicago Great Western Ry. Co. v. McDonough, 8 Cir., 161 F. 657. Upon that issue the jury has found against the defendant. My own personal opinion, if the record seems to reflect one, does not count. I cannot disturb the jury's verdict on this ground.

Defendant's second contention is that plaintiff's evidence about the manner in which the accident occurred is incredible. Substantially, the plaintiff's eyewitnesses, all of whom were stevedores, said that the chain bridle parted while the hatch cover section was sliding smoothly aft. I acknowledge that there were some minor contradictions among them concerning the position of the hatch covers when the up and down winch was started, and also about whether, at the time of the dragging operation, the chain bridle was made fast to the corners of the leading edge, or, on the other hand, was still cater-corner.

Some of plaintiff's eyewitnesses said that immediately after the accident they examined the broken links of the chain bridle and found them to be thinner than the other links, very much worn, and pitted with rust. At the trial these broken links were not available, although the chain bridle itself was. The jury examined this bridle with care, and listened attentively to defendant's evidence concerning its then condition.

Both legs of the bridle had been stretched, one considerably more than the other. It could be argued that if the bridle was in this stretched condition at the time the hatch covers were being put on by the stevedores, then the disparity in length between the two legs would be readily observable by the stevedores during the hoisting and lowering operations. This being so, continued use of the obviously defective bridle by the stevedores might be found to be the sole proximate cause of the accident. On the other hand, if one were to assume that during the operation last mentioned the legs of the bridle were approximately the *same* length, then one might be ready to accept defendant's theory that the breaking of the chain bridle and consequent unequal stretching were brought about because the hatch cover section slewed around, causing an unequal strain on the bridle and on the lead to the snatch block, and that the up and down winchman then ran away from his post while the winch was running—a theory which probably would have excused the defendant if accepted. I plainly intimated these possibilities to the jury in the charge. It chose not to accept them, and apparently believed that the chain was bad when the operation began, and as I understand the matter, this choice binds me.

There were two trials of this case prior to that which resulted in the verdict under scrutiny. Both prior trials resulted in disagreements. So far as I was able to form any conclusion about it, the jury which rendered this verdict was alert, intelligent, and fully conscious of its grave responsibility. The case was ably presented by competent counsel. I feel that to grant defendant's motion would be to invade the province of the jury, and I must, therefore, deny it.