FELLOWS *v.* STEVENS.

1. MASTER AND SERVANT—PERSONAL INJURIES—FELLOW-SERVANT — FOREMAN—SCOPE OF AUTHORITY.

In the absence of a showing that defendant's foreman had authority to borrow and use tools not furnished by the master, plaintiff could not recover for injuries sustained while installing certain apparatus in a factory building owned by third parties from whom the foreman borrowed a defective ladder that broke and caused plaintiff's injuries.[1]

2. SAME—INSPECTION—LADDERS.

Where plaintiff examined the ladder and saw no defects, and its condition was not discoverable upon an ordinary examination, plaintiff, who knew that the employer did not furnish, and had not inspected, the ladder, and who was as competent to inspect the ladder as his master, assumed the risk of its use, and could not recover for an alleged breach of the master's duty to inspect.

3. SAME—NEGLIGENCE.

Plaintiff's foreman was his fellow-servant in the matter of furnishing the borrowed instrumentality.

BIRD, J., dissenting.

Error to the superior court of Grand Rapids; Stuart, J. Submitted October 26, 1911. (Docket No. 111.) Decided November 3, 1911. Rehearing granted November 13, 1911. Former opinion affirmed May 3, 1912.

Case by Clarence A. Fellows against Frank E. Stevens and Julius A. Ziesse, copartners under the name of the Phœnix Heating & Sprinkling Company, for personal injuries. Judgment for plaintiff. Defendants bring error. Reversed, and no new trial granted.

*Hyde, Earle & Thornton* and *Charles A. Watt,* for appellants.

*William J. Landman,* for appellee.

[1] On question of vice-principalship as determined with reference to character of act causing injury, see note in 54 L. R. A. 37.

Ostrander, C. J.   Defendants engaged to install in the manufacturing plant of another an automatic sprinkler system.   They sent materials and tools and other instrumentalities for carrying on the work.   Among them were stepladders, seven or eight in number, which were selected by them, and transferred to the place where the work was to be carried on.   Plaintiff is a pipe fitter, and was one of five men sent by defendants to do the work. One of these men, Barnard, was foreman.   The plaintiff offered testimony tending to prove:   That during the progress of the work he was told by Barnard to use in his work a ladder belonging to the owners of the plant, and not to the defendants.   It was not a stepladder, but a straight ladder.   That he questioned the propriety of using the ladder, instead of a stepladder, and was told that it was better and safer than a stepladder because it had spuds in its feet which would prevent its slipping on the floor.   Plaintiff knew that the ladder had not been furnished by defendants, and that it belonged to the owner of the premises.   The work began July 21st.   It was on August 1st that plaintiff began to use the straight ladder. In the afternoon of the 3d (August 2d was Sunday), while plaintiff was at work upon a pipe about two feet below the ceiling and near to a revolving shaft, a part of the machinery in the building, he mounted the ladder up to the fifth step.   Stepping down to the fourth step from the bottom, the right side of the step broke, and he was thrown against the revolving shaft, his clothing was wound on the shaft, and he was badly injured.   The testimony for the defendants tended to prove that plaintiff was not ordered by the foreman to take the ladder at all, but took it on his own account; that the ladder was not broken at all before he fell on the shaft; that, if found broken afterwards, the break was due either to a blow it received when plaintiff's body was whirled about the shaft, or to the weight of two men who stood on the ladder in an effort to release him.   It is the contention of the plaintiff that defendants are responsible for his injury because

their foreman, Barnard, furnished a defective ladder which broke.

Upon the subject of defendants' responsibility for the conduct of the foreman, the court instructed the jury as follows:

"You must find by a preponderance of the evidence that Barnard furnished the ladder to the plaintiff and directed him to use it, and informed him, instructed him, it was safe and proper to use; and in that connection you must find that Barnard had the authority, and find that by evidence, to take that ladder not owned by the defendants, pick it up there in the shop, if he had found it at the side of the street or anywhere else, that he had general authority to stand in the place of the defendants and give the plaintiff that ladder to use. Of course, if Mr. Ziesse or Mr. Stevens had picked that up and used it there and directed him to use it, then this question would not arise, because they had authority to conduct their own business in such a way as they see fit; but, in order to justify or to hold them liable for some one acting in their place, the party must be acting within the scope of his authority, and if a foreman or any other employé goes entirely outside of his authority, and without any instructions or authority and does something that he has no authority to do, then you can't hold the defendants or his employer liable for that act. So that you must find that Barnard was such foreman or person in authority that he had the right to not only use the ladder as it was furnished there, but to discard it if he saw fit and go and borrow ladders, pick up this ladder or anything that he might find about there, and that, as I say, must be furnished and found by you by the evidence in this case. You will remember the evidence. There is a good deal of contradiction in regard to his authority and direct evidence that he had no such authority, and there is evidence also on the part of the plaintiff as to what his general duties were there, from which you are asked to draw that he had full authority to do all these things; and that is one of the vital questions in the case, gentlemen, that this ladder, having been furnished by not the defendants themselves, if it is expected to recover against them, then he must have such authority as to stand in their place and bind them; otherwise, he was just a fellow-workman in a way, although he may have been a foreman and yet be a fellow-workman. He

fixed it up on his own judgment, and would not bind the defendants."

During the giving of the charge the following occurred:

"*Mr. Hyde:* Just a minute, your honor. I may have misunderstood your honor, but I did understand that your honor said there was a conflict of evidence as to Mr. Barnard's authority. I don't understand that there is any conflict.

"*The Court:* Well, possibly I did use that word, and, if I did use it, I used it inadvertently. There is no conflict perhaps. I don't attempt to explain the evidence, but I won't use the word 'conflict' in the meaning that one witness disputes another, but there is testimony from which the two parties claim different deductions may be made. The defendants and Mr. Barnard and several witnesses, as I recollect it, deny absolutely the authority to use or that this ladder was used by Mr. Barnard. On the other hand, while there is no direct statement that that is not so, yet the plaintiff has attempted to show that Barnard was a foreman and had employed or attempted to line up men to help work, and from some such testimony as that you are asked to draw the inference that he had general authority, and you must take that inference that you are asked to draw from the testimony of the plaintiff, and compare it with the testimony of the defendants and Barnard's and the other testimony that there was no such authority, and then find what is the fact. I didn't mean to say that one contradicted the other.

"*Mr. Landman:* If your honor please, may they take into consideration the fact what Barnard did?

"*The Court:* What?

"*Mr. Landman:* May they take into consideration the fact what Barnard did?

"*The Court:* Oh, surely.

"*Mr. Watt:* I don't understand that that would mean what he did in this particular case of furnishing the ladder. That wouldn't be proof that he had any authority. It must be more than that.

"*The Court:* Circumstances that—

"*Mr. Hyde:* (interrupting): That wouldn't prove that because it was a fact this ladder was furnished by Barnard, that, therefore, Mr. Barnard had authority. You can't prove it that way.

"*The Court:* No.

"*Mr. Hyde:* You have got to show some other way besides his doing it.

"*The Court:* It has got to be shown by testimony and what he did."

In denying the defendants' motion for a new trial, the court said:

"While I had grave doubts at the trial, and still have, as to whether the case ought to have been submitted to the jury and the plaintiff be allowed to recover any judgment, yet I have not been able to satisfy myself of that fact to such a degree of certainty that I feel like setting aside the judgment."

It is assigned as error that the court submitted to the jury the question of Barnard's authority in the premises. I find no testimony in the record tending to prove that Barnard had any authority, general or special, to borrow and use tools in the place of those furnished by the defendants, his masters. This being so, the applicable principle of law is stated in 1 Labatt on Master and Servant, § 168, as follows:

"There is clearly no ground upon which an employer can be held liable where the servant was injured while using, for the purposes of his work, some material substance which happened to be in a convenient position, but which was not the property of the employer, and which was not used by his authority."

It also appears conclusively that the ladder in question was in daily use upon the premises by employés of the owner thereof, and that, if it was defective, a fact which is disputed, the defect was not obvious and not discoverable by ordinary examination and inspection. It is averred in the declaration that the ladder had no such apparent defects as to induce plaintiff, a man of ordinary intelligence, to deem the same unsafe for the use to which it was put. Plaintiff testified:

"I glanced at the steps to see that there was nothing broken. I looked at the steps when I got up. * * *

There was no defect in any round that I could discover at a glance. I could have discovered a defect if I had inspected it, by hitting it with a hammer or something, pulling on it hard. I would have had to have taken off the round itself in order to see the condition of the nail holes, and, in order to tell whether the standard was punky, I would have had to have taken off the rounds."

Assuming, for the purposes of argument only, that a ladder is a tool, or instrumentality, which the master, if he furnishes it, is bound to inspect, it is apparent that the defect, if there was one, could not have been discovered by ordinary inspection. But plaintiff knew that his employer did not furnish the ladder, had not inspected or had opportunity to inspect it. He had no reason to think that the foreman had examined it otherwise than in the manner which plaintiff himself adopted. There is no testimony tending to prove that the foreman was an inspector for the employer. Plaintiff is relying upon the breach of a duty by his master which his master, to his knowledge, had not performed, had no opportunity to perform, which no one had undertaken to perform for him, which plaintiff was as competent to discharge as was the master and which he had opportunity to discharge—a duty arising out of an act of his own of which the master was ignorant.

I feel obliged to announce conclusions opposed to those stated by Mr. Justice Bird, and to hold upon this record that with respect to the use of the ladder no negligence of the defendants is made out, that the foreman and plaintiff were fellow-servants, and the plaintiff assumed the risk of using the borrowed ladder. I do not, however, assent to the doctrine that defendants were bound to inspect the ladders which they furnished

The judgment should be reversed, and no new trial granted.

McAlvay and Stone, JJ., concurred with Ostrander, C. J. Moore, J., concurred in the result reached by Ostrander, C. J.

BIRD, J. (*dissenting*).   Plaintiff sued defendants to recover for injuries which he received while in their employ, and which resulted in a loss of his left arm.   He recovered a judgment in the trial court, and the case is now here on review at the instance of the defendants.

In 1908 the defendants were engaged in the business of selling and installing automatic sprinkler systems, and it was in August of that year, while they were installing one for Philip Fritz, in his manufacturing plant in the city of Grand Rapids, that plaintiff was injured.   The working force consisted of five men, Harry Barnard, the foreman, and four others, one of whom was plaintiff. The defendants furnished the tools used for doing the work.   On the afternoon of the day preceding the injury, while the plaintiff was using one of the stepladders furnished by the defendants, the foreman, Mr. Barnard, came and took it away, and gave plaintiff, instead, a straight ladder about 12 feet long, which he had borrowed from Mr. Fritz.   The plaintiff made some objections to using it, but was assured by the foreman that it would serve his purpose as well, and that it was safer and better, as there were spuds in the bottom which would prevent its slipping.   On the following day the plaintiff placed the ladder against one of the joists in the ceiling of the room, and mounted it to make a pipe connection near the ceiling.   On returning, and when on the fourth rung from the bottom, it broke near the right-hand standard, throwing plaintiff forward upon a revolving shaft, which engaged his clothing, and he was wound up and injured so that amputation of his arm became necessary.

The negligence complained of was the failure of the defendants to furnish the plaintiff with a reasonably safe ladder with which to perform his work.   The defendants resisted the claim of plaintiff upon the grounds, *first*, that the declaration was fatally defective because it failed to set out a cause of action; *second*, that they were not negligent; *third*, that the foreman, Harry Barnard, was a fellow-servant of the plaintiff, and that they were not

liable for his acts in directing him to use the borrowed ladder; *fourth*, that the plaintiff was guilty of contributory negligence.

1. The defendants made numerous objections on the trial to the sufficiency of the declaration, and contended that it failed to set out a cause of action. We cannot agree with them in this contention. The declaration alleged the relation of master and servant; that it was the duty of the defendants to furnish the plaintiff with a safe ladder with which to perform his work; that the defendants failed and neglected to do so, and, in consequence thereof, the plaintiff was injured, without fault upon his part. With these essential allegations, we think the declaration sets out a cause of action with sufficient certainty, in the absence of a demurrer. It is quite likely that many of the objections made by counsel, if raised by demurrer, would have been sustained, but instead they chose to plead the general issue, and go to trial, reserving their objections for the trial. Under this practice, if the declaration sets out a cause of action, the objections will be overruled. *Rowland* v. *Kalamazoo County Sup'ts of Poor*, 49 Mich. 553 (14 N. W. 494); *Sutton* v. *Van Akin*, 51 Mich. 463 (16 N. W. 814); *Whoram* v. *Township of Argentine*, 112 Mich. 20 (70 N. W. 341).

2 Were the defendants negligent? Nothing is better settled in the law relating to personal injuries than the rule that a master is in duty bound to furnish his servant with reasonably safe tools and appliances with which to perform his work, that this duty cannot be delegated to another so as to relieve the master of personal responsibility. *Johnson* v. *Spear*, 76 Mich. 139 (42 N. W. 1092, 15 Am. St Rep. 298); *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N W. 572); *Brown* v. *Gilchrist*, 80 Mich. 56 (45 N W. 82, 20 Am. St. Rep. 496); *McDonald* v. *Railroad Co.*, 132 Mich. 372 (93 N. W. 1041, 102 Am. St. Rep. 426). In the case before us the master furnished the tools with which to install the system. Ladders were an important part of the tools necessary to do the work.

It was therefore incumbent upon the defendants to furnish plaintiff with one that was reasonably safe for the purpose for which it was to be used. The plaintiff's testimony showed that there were no obvious defects in the ladder, and that at the end of the broken rung and the place where it had been nailed to the standard the wood was dozy. This testimony, together with the fact that it broke under plaintiff's weight, made it a question of fact for the jury to say whether the ladder was reasonably safe.

The defendants insist that such a ladder belongs to that class of tools usually denominated small tools, which the servant is bound to inspect for himself. Whether it falls within that class is not of very much importance in this case. If the ladder did belong to that class, then it was the duty of the defendants to make a reasonable inspection of it before they placed it in the hands of the plaintiff. The rule has been laid down by this court that small tools, which are not of the servant's selection, must, in the first instance, be inspected by the master to see that they are reasonably safe and fit for the use intended. *Noble* v. *Steamship Co.*, 127 Mich. 103 (86 N. W. 520, 54 L. R. A. 456, 80 Am. St. Rep. 561). In any event, whether it be numbered among the tools which it was the duty of the master to inspect and keep in repair, or whether it be numbered among the small tools, it was the duty of the defendants to make a reasonable inspection of the ladder before putting it in use, to determine whether it was reasonably safe and fit for the use which was to be made of it.

3. But it is said by the defendants that they furnished a sufficient number of ladders with which to do the work, and that the foreman had no authority to borrow a ladder from Mr. Fritz, and that in doing so he acted outside of his authority, and as to such act he was a fellow-servant of the plaintiff. The testimony shows that Mr. Barnard was placed in charge of the work and of the men, and that he directed how the work should be done, and directed

the men where to work and what tools to use. In directing the plaintiff to use the ladder in question, the jury found that the foreman was acting within his authority. The plaintiff was not required to know whether the ladder belonged to defendant or to some one else, inasmuch as he did not have the right of selection. *De Maries* v. *Jameson*, 98 Minn. 453 (108 N. W. 830); *San Antonio Edison Co.* v. *Dixon*, 17 Tex. Civ. App. 320 (42 S. W. 1009). The foreman, in the course of his duty, had the authority to direct the plaintiff to use this ladder, and it was the duty of the plaintiff to obey this direction, unless there was some obvious defect in it. *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 205. But it is urged that the foreman took part in the work and labored with his men, and by reason thereof he was a fellow-servant of the men. We agree with counsel that this is generally true as to acts which it is not the duty of the master to perform, but, as to acts which it is the duty of the master to perform, the foreman represents the master, and is not a fellow-servant of the men. *Findlay* v. *Foundry Co.*, 108 Mich. 286 (66 N. W. 50); *Beesley* v. *F. W. Wheeler & Co.*, 103 Mich. 196 (61 N. W. 658, 27 L. R. A. 266); *Schroeder* v. *Railroad Co.*, 103 Mich. 213 (61 N. W. 663, 29 L. R. A. 321, 50 Am. St. Rep. 354). The duty to furnish plaintiff a reasonably safe ladder was the master's duty. Therefore, when Mr. Barnard, as foreman, failed to discharge that duty, his neglect was the master's neglect.

4. Was plaintiff guilty of contributory negligence? The conduct of the plaintiff and the inferences which were drawn from his conduct were in conflict. Under such circumstances, the contributory negligence of the plaintiff became a question of fact, to be determined by the jury, and the trial court was right in submitting it to them. The questions involving the negligence of the defendant, the contributory negligence of the plaintiff, the extent of the authority of the foreman, whether reasonable inspection of the ladder was made, and whether it would have disclosed the defect if it had been made, were

all questions left to the jury as questions of fact by the trial court. We see no error in so submitting them. They were all submitted to the jury under very full and careful instructions by the trial court, and we think there was such testimony as justified the verdict of the jury upon all of them. We have examined the other assignments of error, and find nothing in them that calls for a reversal of the case.

The judgment of the trial court should be affirmed.

### ON REHEARING.

*Hyde, Earle & Thornton*, for appellants.

*William J. Landman* (*William K. Clute*, of counsel), for appellee.

OSTRANDER, J. This cause was heard at the October, 1910, term by five of the justices. Two opinions were prepared, one of them by the late Mr. Justice HOOKER, who died July 10, 1911, before the cause was decided. By stipulation of counsel, Mr. Justice McALVAY took the place of Justice HOOKER, and two opinions were delivered November 3, 1911, four of the justices being for reversal and one for affirmance of the judgment. Under the statute, appellee applied for a rehearing by the full bench, and the cause has been reargued. A sufficient statement of the facts will be found in former opinions. Upon a reexamination of the questions presented, I find no occasion for changing what appears in the majority opinion heretofore delivered. It is perhaps proper, in view of the arguments made at the last hearing, to add something to that opinion. It was said that the statement therein that "I find no testimony in the record tending to prove that Barnard [the foreman] had any authority, general or special, to borrow and use tools in the place of those furnished by the defendants, his masters," is contradicted by the record. In this connection the testimony pointed out is that of defendant Ziesse, who on direct examination testified that

the foreman, Barnard, "had no direct or implied authority to borrow a ladder from the Fritz company;" that defendants' equipment included a half dozen eight-foot stepladders, besides the ones employed at the Fritz factory, not in use; that the foreman, Barnard, had no authority to select tools or pipe or to procure tools other than furnished by defendants. On cross-examination he testified:

"I have sawed off the bottom of stepladders to make them shorter, as a workman, and I want my men to do that if they have got to have a stepladder to use. If necessary, a man would have authority to make a twelve-foot ladder into an eight-foot one. Harry Barnard would have authority to do that. He had authority to repair a ladder. He might hunt up a ladder for a workman. I have used ladders as a workman, other than my own at times. There would be no object in sawing off a twelve-foot ladder if there were plenty of eight-foot ladders. They could use those at the shop, and Barnard would have authority to get those at the shop. Without any word from Harry Barnard, Fellows would have no authority to go to the shop for an eight-foot ladder."

Upon direct examination he testified:

"When I said Barnard could have given a man a ladder, I meant by notifying us we would have sent some there. I did not mean Barnard could make him use a particular ladder. He could have said, 'There is some ladders. Get one of them. There is ladders and there is ladders at the shop.' When I said Barnard had authority to authorize the men to use ladders, I meant the ladders that were furnished."

It is not now apparent to me that this testimony contradicts the statement referred to. It seems to me the case is a simple one. The defendants furnished the men with ladders. The testimony most favorable to plaintiff shows that, desiring to himself use the ladder that plaintiff was using, the foreman took it and directed plaintiff to use another which both knew was the property of the owner of the premises, for which reason plaintiff then objected to using it. The foreman forgot, or neglected, to get or order another ladder from the defendants' shop or

warehouse. The ladder broke while plaintiff was using it. That the relations of the foreman and the plaintiff were those of fellow-servants, appears to me to be clear. *Argersinger* v. *Power Co.*, 164 Mich. 282 (129 N. W. 889); and see cases cited in the opinions. Undoubtedly the master owes the duty of furnishing proper tools and materials, but he is not bound to see to it at his peril that an employé and his fellow-servant make proper selections, or that they do not without authority procure tools from others.

The judgment is reversed, with no new trial.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred with OSTRANDER, J. MOORE, C. J., and STEERE, J., concurred in the result.

BIRD, J. (*dissenting*). The reargument of this case has strengthened my opinion that the ladder in question should be classed among the small tools, and that the defendants were negligent in failing to inspect it before ordering plaintiff to use it. *Noble* v. *Steamship Co.*, 127 Mich. 103 (86 N. W. 520, 54 L. R. A. 456, 89 Am. St. Rep. 461), In that case it was held that a soft hammer was within that class. Just why a soft hammer is within that class. and a short ladder is not, is not quite apparent to me. In other words, the master is liable if he fails to inspect a hammer, but is under no obligation to inspect a short ladder. The difference in the nature of the tools does not, in my judgment, justify the distinction. It is insisted that the foreman had no authority to use ladders other than those furnished by defendants. This would probably be true if there had been any other ladders furnished and on the job fit for use. In *Higgins* v. *Williams*, 114 Cal. 176 (45 Pac. 1041), the foreman in charge of the work used a defective machine on which plaintiff was hurt, and the same claim was made as here "that defendants never saw the machine or knew of its being used until after the accident, and never authorized its use, and that plaintiff had as good an opportunity to see that

the key was out of place as defendants if present." In disposing of this contention, the court said it is immaterial whether defendants owned or knew of its use before the accident, and the use of it by Wilson, the foreman, was the defendants' use, and his knowledge of its defects was their knowledge.

I think the case should be affirmed.